PAUL DIETRICH, Doing Business under Trade Name of BLUE RIBBON ICE & FUEL COMPANY, Appellant, v. CAPE BREWERY & ICE COMPANY, ENERGY COAL & SUPPLY COMPANY, F. W. MORRISON and CELIA MORRISON, Doing Business under Firm Name of MORRISON ICE & FUEL COMPANY, M. J. KOECK and A. W. ROBERTSON.

Division One, July 30, 1926.

1. **NEW TRIAL: Grounds Considered on Appeal.** Sustaining a motion for a new trial upon the ground that the verdict for plaintiff was excessive constitutes an overruling of all other grounds assigned. But where the court specifically overruled the assigned ground that the verdict was not sustained by the evidence, and sustained the motion on the sole ground that the verdict was excessive, it does not necessarily follow that when the motion was sustained upon the latter ground the question of the weight of the evidence dropped out of the case. The trial court may well have concluded that the evidence was sufficient to sustain a verdict, but that the verdict in view of the evidence was excessive. In such case this court is not precluded from considering the overruled assignment that the verdict was not sustained by the evidence, but the burden rests upon respondent to show that the verdict was properly set aside upon grounds contained in the motion, other than those specified by the trial court for sustaining the motion.

2. **COMBINATION: Unlawful Destruction of Competition: Pleading.** A petition alleging the making of an agreement and combination, its nature and purpose, the acts done thereunder by a defendant, the division of the

city into zones, the designation of only one person in each zone to whom ice should be sold in wholesale quantities, the refusal to sell to plaintiff because he refused to be a party to the agreement, and that thereby his profitable ice business was destroyed, to his damage in the sum of fifteen thousand dollars, states a cause of action. The statute (Sec. 9667, R. S. 1919) makes it unnecessary to allege the manner in which or when or where such agreement or combination was made.

3. **COMBINATION: Unlawful Destruction of Competition: Pleading: Damages.** It is sufficient to allege the sum in damages suffered through the loss of a profitable business destroyed by the unlawful combination of defendants, without setting out the evidenciary facts from which may be determined the amount of the profits lost.

4. ——: ——: **Independent Agent: Retailer.** A company which buys ice from its co-defendants, the manufacturers, and does a retail business, in compliance with an agreement with the combination designed to destroy plaintiff as a competitor and drive him out of a profitable retail business, is not engaged in an occupation of personal service; but having bought ice at wholesale prices from its co-defendants at prices fixed and paid, and thereby became the owner, and sold it to its customers within the zone assigned to it by the combination, is not an agent selling property of one person to another on commission, but within the terms of the statute is a member of the combination, and is liable for damages.

5. ——: ——: **Partner's Wife: Damages.** Whatever a partner does is the act of the partnership; and although the wife did not personally make an agreement with the other defendants to destroy the business of plaintiff as a retail dealer in ice, yet if she was a partner in the firm which was engaged in the manufacture and sale of ice, and which through her husband entered into such unlawful combination with others, she under the statute (Secs. 9655, 9666, R. S. 1919) was a member of the combination and is liable in damages resulting therefrom to plaintiff.

6. ——: ——: **Damages: Personal Liability of President of Corporation.** The president of a corporation which entered into a combination to destroy the business of a competitor is personally liable for the resulting damages. Under the statutes (Secs. 9655, 9666, R. S. 1919) the president of a corporation which is a party to the combination participates in the acts and agreements which bring about the unlawful combination.

7. ——: **Conspiracy to Destroy Competition: Definition: Proof: Accomplished Purpose: Damages.** A conspiracy is an agreement or understanding between two or more persons to do an unlawful act, or to use unlawful means to do a lawful act, but it is not necessary that it should be proven by an express agreement or by direct evidence, but it may be proven like any other fact by circumstantial evidence. In a suit by a retailer of ice to recover damages for the loss of a profitable business, destroyed by an alleged combination among defendants, the purpose must be accomplished in whole or in part, and done in pursuance of the conspiracy, and the party must have sustained actual damages done by reason thereof. And the evidence in this case touching the statements, conduct, course of business pursued by defendants, and the effects of what they did, made a case submissible to the jury, under proper instructions.

8. ——: **Unlawful Destruction of Competition: Restrictions upon Right to Do Business.** The right of a private person to engage in a business of a private character, to buy from whom he pleases, to sell to whomsoever he will, or to refuse to sell to a particular person, does not extend to an allowance of an agreement and concerted action thereunder of such person with others similarly engaged, in the accomplishment of a common design to destroy the business of another, or to the making of an agreement forbidden by law and concerted action thereunder inflicting an

injury upon the public. What persons engaged in similar business may do individually is essentially different from what they may do collectively pursuant to an agreement among themselves and by concerted action thereunder.

9. ————: **Proof: Beyond Reasonable Doubt.** A suit to recover damages resulting from an unlawful combination between defendants to destroy plaintiff's business and eliminate him as. a competitor is a civil action, and it is not required that the evidence establish their guilt beyond a reasonable doubt, but their guilt is to be determined according to the preponderance of the evidence.

10. **VERDICT: Setting Aside: Discretion.** The trial court has a large discretion in setting aside a verdict it deems excessive or inadequate. And the appellate court is less inclined to interfere when a new trial has been granted than when it has been denied. But the discretion is not unlimited; substantial justice is the final test.

11. **EXCESSIVE VERDICT: Damages: Loss of Business.** Plaintiff was engaged in the retail business of buying and selling ice and coal, and sues for damages resulting from the loss of his ice business, which he alleges was destroyed by a combination entered into by defendants to eliminate him as a competitor. The evidence pertaining to his damages resulting from the loss of the ice business is indefinite in character, and does not clearly separate the ice business from the coal and sand business, and includes an item of $7,500 as the value of the good will of the business, which was reached by a calculation upon an annual profit of $1,500, and also $3,000 as the cost of building up the business, an item not shown by the books. Held, that the trial court did not abuse its discretion in setting aside a verdict for $8,000 on the ground that it was excessive.

Corpus Juris-Cyc. References: **Appeal and Error,** 4 C. J., Section 2556, p. 662, n. 91; Section 2557, p. 665, n. 9; Section 2736, p. 785, n. 91; Section 2818, p. 836, n. 74, 75. **Conspiracy,** 12 C. J., Section 1, p. 540, n. 4; Section 218, p. 631, n. 16, 17; Section 226, p. 633, n. 47. **Corporations,** 14a C. J., Section 1952, p. 173, n. 60. **Monopolies,** 41 C. J., Section 101, p. 129, n. 20; Section 119, p. 138, n. 65; Section 197, p. 187, n. 26, 29, 30; Section 201, p. 189, n. 59 New; Section 202, p. 189, n. 64; Section 204, p. 190, n. 81. **New Trial,** 29 Cyc., p. 1028, n. 75. **Partnership,** 30 Cyc., p. 523, n. 87.

Appeal from Cape Girardeau Court of Common Pleas.—*Hon. John A. Snider,* Judge.

AFFIRMED.

*Ward, Reeves & Oliver* for appellant.

(1) The petition alleges, and the proof shows, that defendants were guilty because they did create, enter into, become members of and participate in a pool, trust, agreement, combination, confederation or understanding with and among themselves. All persons creating or entering into or becoming members of or participating in such agreement, are by statute made guilty of conspiracy in restraint of trade, and liable for treble damages "to any person injured in his *business* or *property* by reason thereof." Secs. 9655, 9656, 9657, 9658, 9662, R. S. 1919. (2) The petition clearly and

aptly stated a cause of action against the defendants herein, both in form and substance. State ex inf. v. Lbr. Co., 260 Mo. 278, 283; State ex inf. v. Banking Co., 265 Mo. 387; State ex rel. v. Ice & Fuel Co., 259 Mo. 579; Brewing Co. v. Belinder, 97 Mo. App. 64; Walsh v. Assn., 97 Mo. App. 280; Kennis v. Safron & Ray, 193 Mo. App. 371; State ex rel. v. Ice Co., 246 Mo. 216; Sec. 9667, R. S. 1919. (3) Plaintiff's proof, as to the unlawful conspiracy, was abundant, and, we might add, practically admitted by defendants in their written statements offered in evidence, and in fact only denied by the bald statement of defendants Robertson, Koeck and Morrison. Secs. 9655, 9656, 9657, 9658, R. S. 1919; State ex rel. v. Ice Co., 246 Mo. 216; State ex rel. v. Ice & Fuel Co., 259 Mo. 578; State ex rel. v. Armour & Co., 265 Mo. 148; Heim Brewing Co. v. Belinder, 97 Mo. App. 68; Walsh v. Assn., 97 Mo. App. 289. (a) And plaintiff's proof as to his damages was uncontradicted. Books were all produced and audit was made of the books, auditor's conclusions given, and the oral testimony as to the value of the property and annual profits made. Defendants, all of whom were icemen, and the two wholesale ice dealers had for years previously supplied plaintiff with ice and knew the amount of ice sold by plaintiff each year, the wholesale and retail price, and from their own experience knew the overhead expense in handling such ice, yet no contradiction made by them as to the profit plaintiff claimed. Therefore, there was no dispute of the witnesses, as to the damages, and the jury allowed a sum much less than the proof showed plaintiff was entitled to. (4) Plaintiff was forced out of business by defendants' unlawful combination in restraint of trade, and he may recover for loss of his business, as a business, arising from the tort or wrong of defendants. 17 C. J. 795; Ganz v. Ry. Co., 220 S. W. 495; Galleys v. Rose, 207 Mo. App. 692; Morrow v. Ry. Co., 140 Mo. App. 213; Gildersleeve v. Overstalz, 90 Mo. App. 518, 528. (5) The trial court sustained the motions for new trial in this case upon the sole ground that the verdict was excessive. That was the only ground raised in the different motions for new trial, that the court sustained, and he overruled all other grounds, including the one set out in each motion for new trial that the verdict was against the weight of the evidence; and the court followed the statute in specifying the reason for granting a new trial. Sec. 1454, R. S. 1919; Fair v. Preston. 157 Mo. App. 324; Roe v. Bank, 167 Mo. 406; Stoner v. Royar, 200 Mo. 444; Gould v. St. John, 207 Mo. 619. An order for new trial, especially putting it on a certain ground, in effect, overrules all other grounds. Arkansas Lbr. Co. v. Lbr. Co., 252 S. W. 961.

*Spradling & Dalton, Russell L. Dearmont* and *Oliver & Oliver* for respondents.

(1) Only one error is assigned by appellant in this case: "The court erred in sustaining motions for a new trial, on the ground that the verdict was excessive." The statute not only recognizes the right of a trial court to set aside one verdict of a jury, but the trial court should do so whenever the trial judge is satisfied after having heard the evidence that the verdict as rendered is unjust, whether the motion for a new trial assigns that as a cause or not. Secs. 1453, 1454, R. S. 1919; Ewart v. Peniston, 233 Mo. 708; Rodon v. Transit Co., 207 Mo. 406; Gould v. St. John, 207 Mo. 632; Bank v. Wood, 124 Mo. 72; Haven v. Mo. Ry. Co., 155 Mo. 224; Schuette v. Transfer Co., 108 Mo. 21. (2) The appellate court is not restricted to the reasons assigned by the trial court for granting a new trial, if an examination of the record shows that the end reached by the trial court was right and just. Haven v. Railway, 155 Mo. 216, 224; Johnson Grain Co. v. Railroad Co., 117 Mo. App. 194. (3) This court will not interfere with the order of the trial court in sustaining a motion for a new trial, unless the error complained of was a judicial error. It will never interfere with the discretionary power of a trial court in granting a new trial for the first time where the discretion of the trial court is exercised in determining the amount of the verdict returned. Casey v. Transit Co., 186 Mo. 229; Haven v. Mo. Ry. Co., 155 Mo. 216; Ewart v. Peniston, 233 Mo. 709. (4) A heavy verdict always challenges the court's sharpest scrutiny. Devoy v. Transit Co., 192 Mo. 221. (5) Whether the verdict in this case was reasonable or excessive, was a question of fact, in the first instance, for the trial court to decide. That court had all the witnesses before it; observed their conduct and manner in testifying—an important fact and vantage in considering the weight and determining the credit that should be given to the different witnesses. The trial court found as a fact, that the verdict returned by the jury in this case was excessive and that justice demanded that it should be set aside. The trial court's finding that this verdict was excessive is not a judicial error. It was the exercise of that sound discretion with which trial courts are vested, and this court ought not to disturb that finding of fact. Casey v. Transit Co., 186 Mo. 229; Haven v. Mo. Pac. Ry. Co., 155 Mo. 216. (6) Plaintiff was not entitled to any damages whatever: (a) His petition states no cause of action against these respondents, or either of them. Live Stock Co. v. Browning, 260 Mo. 324; United States v. Colgate, 250 U. S. 300, 63 L. Ed. 992; United States v. Trans.-Mo. Freight Assn., 166 U. S. 320. Harelson v. Tyler, 281 Mo. 398. (b) The "exhibits" made from the books of appellant and offered in evidence conclusively show that Paul F. Dietrich, appellant, did not own one dollar in the Blue Ribbon

Company in 1919 nor in 1920. (c) If the "exhibits" made by Smith from the Blue Ribbon Company's books prove anything, they establish the fact that Ben Dietrich was the owner of the one-half interest in that company in December, 1919, and in December, 1920, and there is no testimony in appellant's record showing that this appellant ever acquired Ben Dietrich's interest after December 31, 1920. (d) The testimony fails to show any issuable facts upon which the jury could base or draw any inference of fact tending to show that the appellant had suffered damages. (7) In actions to recover penalties the pleadings are to be construed with the same strictness that indictments are. The facts constituting the gravamen of the action should be clearly and distinctly stated in order that it may appear that the case is within the statute. 30 Cyc. 1352. In actions under a penal statute the plaintiff, to recover, must bring his case clearly within the statute. Being in the nature of criminal prosecution, the evidence proving defendants' guilt must be beyond a reasonable doubt. Town of Glenwood v. Roberts, 59 Mo. App. 167, 170; Boesel v. Wells Fargo, 260 Mo. 463, 480. (8) The statute upon which appellant bottoms his case cannot be applied to Energy Coal & Supply Company. That company did not manufacture ice, but bought its supply from its co-defendants, with which it supplied its patrons. The business of this defendant was one of personal service, an occupation, and is not and could not come under the ban of the statute. Harelson v. Tyler, 281 Mo. 383; State ex rel. v. Associated Press, 159 Mo. 456. (9) There is no warrant in law, or in reason for any judgment against M. J. Koeck, president of Cape Brewery & Ice Company, nor against A. W. Robertson, president of Energy Coal & Supply Company, nor against Celia Morrison, wife of Captain F. W. Morrison. The two first named were acting for their respective corporations, and there was no testimony connecting Mrs. Celia Morrison with the matter at all.

LINDSAY, C.—This suit is founded upon the provisions of Sections 9655-9658, Revised Statutes 1919. The petition charges the creation and maintenance by defendants of an agreement and combination in restraint of trade, and of competition in the manufacture and sale of ice in the city of Cape Girardeau, whereby it is alleged plaintiff was forced out of business as a retail dealer in ice and was damaged.

The plaintiff had a verdict for $8000 as damages, and allowance for $1000 as attorney's fees. The amount allowed as damages was trebled on motion, under the provision of Section 9662, and judgment for $25,000 was rendered against the defendants. The trial court sustained defendants' motions for a new trial, and specified of record, as the single ground therefor, excessiveness of the verdict. It may be noted at this time that the record, as originally entered,

erroneously recited that the motion was sustained because the verdict
was against the weight of the evidence, and because the verdict was
excessive; but later this was corrected by *nunc pro tunc* order, con-
fining the ground to excessiveness of the verdict.

Counsel for plaintiff say that the sustaining of the motion upon
the ground that the verdict was excessive, constituted an overruling
of all the other grounds assigned. That is true. [Kersten v. Hines,
283 Mo. 634.] They suggest that since the court overruled the assign-
ment that the verdict was not sustained by the weight of the evidence,
but allowed the motion on the ground of excessiveness of the verdict,
it follows conclusively that the motion was not sustained on the
latter ground upon the question of the weight of the evidence. This
does not necessarily follow, because a trial court may well believe
that the evidence is sufficient to sustain a verdict in favor of a
plaintiff, and yet, in consideration of the evidence as to the amount
of damage, properly hold that the verdict actually rendered was
excessive in amount. In Gaty v. United Railways Co., 286 Mo. 503,
the defendant was granted a new trial upon the sole ground of
newly discovered evidence, one of many assigned in the motion.
That ground was held to be not good upon the appeal, and, upon
a review of the evidence, the order granting a new trial was sus-
tained upon the sole ground that the verdict was excessive. That was
done under the rule there stated, l. c. 522: "We are not confined to
a consideration of the particular ground on which the trial court
based the order. If the respondent brings to our attention other
grounds of the motion, which, on the record, entitled him to a new
trial, we affirm the order despite the invalidity of the ground upon
which the trial court acted." But in such case the burden rests
upon the respondent to show that upon grounds contained in the
motion, other than those specified by the trial court, the verdict
was properly set aside. [State ex rel. v. Thomas, 245 Mo. l. c. 73;
Kersten v. Hines, supra.]

Acting upon this rule, counsel for defendants, in joining issue
with plaintiff, upon the ground specified, insist that the order is
sustainable on the grounds that plaintiff did not state nor prove a
cause of action for recovery of damages against defendants, or either
of them. It is insisted that the evidence did not sustain the charge
of making and carrying out an unlawful conspiracy, and that
defendant Energy Coal & Supply Company, which was not a manu-
facturer of ice, but bought of its co-defendants the ice retailed to
its consumers, was not, by reason of any agreement with the de-
fendants, under the ban of the statute.

The petition charged that since the —— day of ——, 1920, the
plaintiff was engaged in the business of selling ice at retail in the
city of Cape Girardeau; that he and his predecessors, from whom

he had acquired the business, during the twelve preceding years had built up a large and profitable business in handling and selling ice at retail under said trade name; that defendant, Energy Coal & Supply Company, a corporation, for more than two years prior to filing the suit, was in the business of handling and selling ice at retail in said city; that the Cape Brewery & Ice Company, a corporation, had for many years been engaged in the business of manufacturing ice and selling it at wholesale in said city; that defendant Morrison Ice & Fuel Company, a co-partnership, had likewise, for many years, been engaged in the business of manufacturing ice and selling it at wholesale in said city and that the defendants, Koeck and Robertson, were presidents, respectively, of the Cape Brewery & Ice Company and Energy Coal & Supply Company.

The petition is in one count, uses the language of the statute, and charges the creation of an agreement and combination between defendants in restraint of trade and competition in the manufacture, purchase and sale of ice in said city, and that it was entered into by defendants to regulate, control and fix the price of ice in both wholesale and retail quantities in said city, and to fix and limit the amount and quantity of ice to be delivered and sold and the retailers to whom ice should be sold in wholesale quantities in said city; that defendants by their agreement, divided the city into zones and divisions, and designated the only persons to whom ice should be sold in wholesale quantities within said city and by their said unlawful agreement each and all of them refused to furnish or sell to plaintiff any ice in wholesale quantities and refused to allow plaintiff to carry on his business of selling ice at retail in said city; that defendants entered into said agreement to control and limit the retail trade in ice in said city, and to limit competition in such trade by refusing to sell to plaintiff, for the reason that plaintiff would not and did not become a member or a party to such combination; that defendants by said agreement boycotted the plaintiff, because he refused to become a member or party to such agreement; that defendants agreed together to raise the retail price of ice in said city, and because plaintiff refused to become a party to said agreement, they agreed together to refuse and did refuse to sell plaintiff any more ice, and that defendants at said time divided the city into zones or territorial divisions and designated only one person to sell ice at retail in each of said divisions, and agreed together to stifle trade and limit competition and prevent more than one person from selling ice at retail to consumers in each of said territorial divisions; that the purpose and intention of defendants by said unlawful agreement and combination was to stifle trade, increase the price of ice to the consumers, and thereby greatly injure the public and the people of said city. The plaintiff then alleged that the defendants still

maintain and are still carrying out their said unlawful agreement, and have continuously maintained the same to the great damage and injury of plaintiff and his trade and to the great damage and injury of the public and people of said city; that on account of said agreement and combination, the plaintiff was forced to and did undertake to buy ice in other cities, but on account of the distance, the freight rates and loss in transport, he was unable to successfully carry on his retail ice business, and was forced to and did quit and abandon that business; that on account of the unlawful combination and acts of defendants he had entirely lost his ice business in said city, which had cost him a large sum to build up and carry on, and which had been damaged and destroyed, and that he had lost a large amount in profits, covering a period of more than one year before the filing of the suit, and he alleged that he had been damaged thereby in the sum of $15,000.

The defendants did not demur to the petition, but filed their motions to have plaintiff required to file a bill of particulars, alleging that they were not advised by the petition upon what facts the plaintiff sought or expected to recover damages, and that there was no statement in the petition indicating the basis upon which he expected to recover damages. This motion was overruled; defendants excepted, and filed a term bill of exceptions. Answers were filed, each of which was a general denial. Under Section 9667, Revised Statutes 1919, it is provided that it is not necessary to plead the manner in which or when or where such agreement or combination was made.

The petition charges the making of an agreement and combination, and its nature and purpose, the acts done thereunder by defendants, the division of the city into zones, the designation of only one person in each zone to whom ice should be sold in wholesale quantities, the refusal to sell to plaintiff for the reason that he refused to be a party to the agreement and that thereby his profitable business was destroyed, to his damage.

As to what it is necessary to plead in suits of this character, the rule is laid down in 12 Corpus Juris, section 218, page 631: "In alleging damage, it is not sufficient simply to state that damage did in fact result; but the facts should be alleged from which the court can see, if the facts are true, that damage would naturally or possibly result from the acts stated. The allegation of facts as they actually exist, however, does not require or permit a statement in the complaint of the evidence relied upon to prove such facts, unless the evidence consists of the facts themselves."

In this case facts were pleaded, which, if true, were such as from them it could be seen that damage would naturally result. The substance of the complaint of the petition is that plaintiff owned and

operated a business which was profitable, and that he lost the business as the result of the unlawful combination and acts of defendants. The character and purpose of the combination, and the nature of the acts, were described.

It was sufficient to allege the sum in damages suffered through the loss of a profitable business, without setting forth the evidentiary facts, to be shown from which would be determined what was the amount of profits lost. In this respect there can be no distinguishable difference in alleging damage for loss of business profits, and alleging damage for loss of earnings through personal injury sustained by a plaintiff as the result of the negligent act of another.

It is alleged in the petition that defendant, Energy Coal & Supply Company bought ice from its co-defendants, who were manufacturers, and that it did a retail business. That company was not a manufacturer as the evidence shows. That company, it is urged, was engaged in an occupation of personal service, and for that reason could not be within the statute. Harelson v. Tyler, 281 Mo. 383, and State ex rel. v. Associated Press, 159 Mo. 410, are cited in support of that contention, and in the same connection reference is made to Live Stock Co. v. Browning, 260 Mo. 324.

Neither the matters pleaded nor the evidence in this case as to the business of the Energy Coal & Supply Company show that company to have been performing a personal service. It was not an agent selling the property of one person to another person, for a commission, or otherwise. It bought ice at wholesale prices from its co-defendants at a price which it paid, and thereby became the owner of the ice, and sold the ice to its own customers within the zone apportioned to it. It dealt in a commodity, an article of manufacture, bought and sold, and in that character, was within the terms of the statute. This was also the character and manner of the business done by the plaintiff. In Live Stock Co. v. Browning, it was pointed out, l. c. 346, that the statute did not cover an agreement or combination not to deal with one who was an agent, that is one who was simply engaged in the business of selling one man's property to another for an agreed or reasonable fee. The like distinction is pointed out in Harelson v. Tyler, l. c. 398, in that part of the opinion dealing with the question whether the petition stated a cause of action under the statute. It was there held that "labor, whether physical or intellectual, is not a 'product or commodity,' that is the subject of 'purchase and sale' within the meaning of the statute." But in this case it was a commodity and not a personal service which was dealt with in the alleged agreement, and the question was whether that company became a member of the combination affecting that commodity.

It is urged, but· without citation of any authority, that there was no warrant in law or in reason for a judgment against defendant Koeck, president of the Cape Brewery & Ice Company, nor against defendant Robertson, president of the Energy Coal & Supply Company, nor against Celia Morrison. It is said there was no testimony connecting her with the matter at all. As to that, there is no showing that Celia Morrison, personally, made any agreement, but it is conceded she was a partner of F. W. Morrison in the manufacture and sale of ice, and clearly whatever F. W. Morrison did was the act of the co-partnership. As to defendants Koeck and Robertson, whatever agreement was made and whatever acts were done by or for their respective companies, were made and done by them as the persons controlling the acts of those companies. The statute (Sec. 9655) includes ''any person who shall create, enter into, become a member of or participate in any'' such agreement, combination or understanding. Section 9666 is as follows: ''The words 'person' or 'persons,' used in this article, shall be deemed to include natural persons, partnerships, associations of persons and corporations, created or organized by or under the laws of this State or under the laws of any other state or country.'' Under these provisions and under the circumstances shown, it could not be said that the persons mentioned did not participate in the agreement and the acts done. The question of participation was submitted under plaintiff's Instruction 2.

The evidence was that defendants, the Cape Brewery & Ice Company and the Morrison Ice & Fuel Company, were the only companies, or persons, manufacturing ice in the city of Cape Girardeau. Prior to March, 1921, the Energy Coal & Supply Company was not engaged in the retail ice business in that city. Plaintiff's evidence was that at and prior to the time in question, the plaintiff had about 1400 customers, or more than one-half of the retail trade in ice in said city. There were and had been two others engaged in the retail business. These were Chilly Meinz and Gus Hanny.

The evidence for plaintiff tended to show that about March, 1921, the city was divided into three zones; that thereafter Gus Hanny had all the retail ice business south of Good Hope Street, a street extending east and west; and that he procured his ice from defendant, Morrison Ice & Fuel Company; that Chilly Meinz had the business in the north part of the city, that part north of Washington Street, and got his supply of ice from the Cape Brewery & Ice Company; and that defendant, Energy Coal & Supply Company had the exclusive trade in the zone between those streets, constituting the central and principal part of the city, and procured its ice from both the Cape Brewery & Ice Company and Morrison Ice & Fuel Company, under an agreement that it should take fifty per cent of its needed supply from each of said companies. The evidence further

showed that neither of these retail dealers would sell to any person outside of the zone apportioned to him. It was shown that after these arrangements went into effect, both said manufacturing companies refused to sell ice to the plaintiff. The plaintiff introduced in evidence statements made by defendants upon an inquiry had before the Chamber of Commerce of Cape Girardeau on June 30, 1921. In the statement made by defendant, Robertson, president of the Energy Coal & Supply Company, he stated that he had a contract with Morrison, and Cape Brewery & Ice Company, for his requirements for ice for retail delivery to the exclusion of all others, except Meinz and Hanny; that under the contract he was the only retail dealer who could purchase ice from the manufacturers, for his territory; that he knew the Blue Ribbon Ice Company could not buy ice from either of the two manufacturers; that the Blue Ribbon Ice. & Fuel Company could not buy ice from the manufacturers he had a contract with, because he had the exclusive sale of ice at retail within his territory; that Chilly Meinz was prohibited from going north of Good Hope Street to deliver ice, as he had formerly been free to do, because it was his (Robertson's) proposition which had been accepted by Koeck, president of the Cape Brewery & Ice Company, from whom Meinz obtained his supply of ice. He was asked if he would produce the contract or a copy to file with his statement, and replied that he would not. His statement before the Chamber of Commerce contains the following: "Do you know of any person attempting to prohibit or curtail the shipment of ice to Cape Girardeau? Yes, I am."

A witness for plaintiff, testifying to conversations with defendant Robertson, said: "Mr. Robertson said when he talked about this ice business that he would not have it unless he could have it all, or the best part, because this town was too small for any competition."

The statement by F. W. Morrison was also introduced in evidence, in which Morrison said he had a contract to deal exclusively with two retail dealers, Gus Hanny and defendant Energy Coal & Supply Company, and that he refused to sell to any retail dealers other than those two.

The statement made by defendant Koeck to the Chamber of Commerce was also introduced in evidence. His statement, like the others, was in the form of questions and answers. To the question whether he had an exclusive contract, to deliver ice to retail dealers in Cape Girardeau, he said he was selling to two retail dealers, Energy Coal & Supply Company and Chilly Meinz; that he would sell to any retail dealers except the "Blue Ribbon;" that he had offered to sell to plaintiff at wholesale price of forty cents per

hundred pounds, but that he refused to say what his price to dealers was.

Plaintiffs introduced a letter written by defendant F. W. Morrison on March 30, 1921, to a Mr. Creasey at Popular Bluff, from whom the plaintiff was buying, or attempting to buy ice. In this letter Morrison wrote Creasey, saying that he (Morrison) was informed Creasey was shipping ice to the plaintiff. The purport of the letter was, that to have ice shipped in from Popular Bluff would demoralize business, and be an encroachment on the two plants operating in Cape Girardeau, and that competition of that sort would force the local plants to reduce prices enough to discourage the practice.

There is testimony that plaintiff sent wagons to the plants of defendants after ice, with the purpose of procuring ice without it being known that such ice would be used for plaintiff's trade; and plaintiff's testimony is, that this effort was closely watched by defendants, Morrison and Robertson, and that orders were given that no ice should be sold to the plaintiff, or to others who might deliver it to the use of the plaintiff.

Wilson Eaves, a witness for plaintiff, who had at various times worked for each of defendants, testified that Mr. Latham, Morrison's manager, said to him, the witness, that "Mr. Robertson, Mr. Morrison and Mr. Koeck had a contract to put the Blue Ribbon Ice & Fuel Company out of business and not to sell them any ice."

Another witness said that Latham told him that "Mr. Morrison, the Energy Company and the Cape Brewery & Ice Company had agreed not to take one another's customers."

Defendants' contention was, and their testimony tended to show, that prior to the entry of the Energy Coal & Supply Company into the ice business, the plaintiff was negotiating with both the Cape Brewery & Ice Company and Morrison & Company for ice for the season of 1921; that plaintiff caused each to believe he would buy his ice from them for 1921; that plaintiff prepared and forwarded to the Cape Brewery & Ice Company a contract to be executed, under which plaintiff was to have a supply of ice for the season of 1921, to the exclusion of any other person; that the Cape Brewery & Ice Company refused to make such a contract with plaintiff; that meantime, and before formal refusal, the plaintiff, assuming that such a contract would be made, told F. W. Morrison he would get his supply of ice from the Cape Brewery & Ice Company; that Morrison became indignant, refused further to talk to or deal with plaintiff, and thereafter sought to make and did make an arrangement for the Energy Coal & Supply Company to go into the retail ice business.

Upon the question whether, as a result of the arrangement referred to, the price of ice was raised, the testimony is conflicting. Before

the Chamber of Commerce, Morrison was asked why his price for ice then was higher than at the same .period in the year before. He answered: "Nothing has come down and lost money for three years."

Plaintiff introduced several witnesses who testified that they were required to pay more for ice in 1921, after plaintiff went out of business, and they bought Energy Coal & Supply Company ice, than they had formerly paid to plaintiff for ice.

Defendant's testimony tended to show that ice was sold in the season of 1921, at the price that had theretofore prevailed. On his cross-examination plaintiff said: "In 1920 the retail price of ice in the city was fifty cents for business houses and sixty cents for private homes; it was the same price in 1921."

Ben Dietrich, a son of the plaintiff, testified that in the summer of 1920 he was requested by the defendants, Morrison and Cape Brewery & Ice Company to agree to raise the price of ice from forty cents and fifty cents, to sixty cents a hundred, and that he refused; that defendant Koeck asked plaintiff and plaintiff's sons to attend a meeting at the office of Mr. Morrison to raise the price of ice.

The evidence touching the statements, conduct, course of business pursued by defendants, and the effect of what they did, is extensive. The conclusions as to whether there was an agreement between defendants and its purpose, and the question of the execution of such agreement by them and its effect, must be drawn from the circumstances in evidence. The question is presented here by respondent as upon a demurrer to the evidence, and its determination is to be made as if upon demurrer. "A conspiracy is an agreement or understanding between two or more persons to do an unlawful act, or to use unlawful means to do an act which is lawful, but it is not necessary that it should be proven by an express agreement or by direct evidence, but may be proven like any other fact by circumstantial evidence. But it must exist between at least two persons." [Ross v. Mineral Land Co., 162 Mo. 331.] In a case such as this, the purpose must be accomplished in whole or in part, and done in pursuance of the conspiracy, and the party complaining must have sustained actual damages done by reason thereof. The issues arising upon the pleadings were submitted to the jury under the instructions. No complaint is made of the form of plaintiff's instructions, and no complaint is made of refusal of instructions offered by defendants, except as to those of peremptory character, several as to each defendants, or common to them all. Under the evidence the case was submissible.

Argument is advanced, founded upon the right of a person engaged in a business private in character, to buy from whomsoever

he pleases, to sell to whomsoever he will, or to refuse to sell to a particular person. The right does not extend to the allowance of an agreement and concerted action thereunder of such person with others similarly engaged, in the accomplishment of a common design, to destroy the business of another, or to the making of an agreement forbidden by law, and concerted action thereunder, inflicting an injury upon the public. What the defendants could have done, severally, by independent action, is essentially different from what they might do collectively, pursuant to an agreement between themselves and by concerted action thereunder. [Heim Brewing Co. v. Belinder, 97 Mo. App. 64; State ex rel. v. People's Ice Co., 246 Mo. 221; State ex inf. v. Armour Packing Co., 265 Mo. 148.]

The contention is made by respondents that the action being in the nature of a criminal prosecution, the evidence proving defendants' guilt must establish it beyond a reasonable doubt. In support of that, Town of Glenwood v. Roberts, 59 Mo. App. 167, and Boesel v. Wells Fargo, 260 Mo. 463, are cited. This however, is not the rule. This is a civil action, and notwithstanding the nature of the charge made, determination of the issues is to be made according to the preponderance of the evidence, and not according to the rule in criminal cases. [Edwards v. Knapp & Co., 97 Mo. 432; Smith v. Burrus, 106 Mo. l. c. 100; State ex rel. v. Ellison, 268 Mo. 239; Brooks v. Roberts, 281 Mo. l. c. 560; Farmer's Loan & Trust Co. v. Southern Surety Co., 285 Mo. l. c. 653.]

Upon the questions foregoing, raised by respondents and outside of the grounds specified by the court in its order, we rule against defendants.

There remains the question of the propriety of the action of the court in setting aside the verdict on the ground that it was excessive. Upon that particular question the applicable rule was stated in Kelly v. Columbia Box Co., 248 S. W. l. c. 590 as follows: "The lower court has not only a large discretion in setting aside verdicts it deems excessive, but also which it deems inadequate, and this court refuses to interfere unless an abuse of discretion on the part of the lower court is manifest."

Statement of the rule in its general application to orders granting new trials, was made in Devine v. Wells, 254 S. W. l. c. 65, where it was said: "that the appellate court is less apt to interfere when a new trial has been granted than when it has been denied." And continuing, it was there said: "The discretion of th trial court is not, however, an unlimited one. It is not measured by the mere will of the trial judge. . . . The rule looks to substantial justice in the end."

In the instant case the trial court found as a fact that the verdict was excessive, and "this finding of the court is to be taken as true

unless the evidence shows the contrary at least clearly enough to make out an abuse of discretion." [Grezkoviak v. Union Electric Light & Power Co., 252 S. W. l. c. 365, 366.]

Plaintiff testified that he was the sole owner of the business at the time the defendants took the alleged action against him. He said that he started the business about the year 1909; that his sons were with him in the business; that about 1914 he sold one-half interest to his brother Martin Dietrich and about November, 1920, he bought the one-half interest of his brother. The business so operated, included a coal business as well as an ice business.

Testifying as to the equipment for the latter business and what became of it upon his abandonment of the ice business, he said: "I don't know what became of the equipment I had on hand for handling the ice business. It just went one place and another. I sold it for whatever I could . . . I don't know exactly, but I had about twelve or fifteen hundred dollars invested in the equipment of the ice business. We had twelve horses and they were worth at the time $1600, and about six wagons. They were worth about $1000. I paid $2000 for my truck and at the time I think it was worth $1500."

Plaintiff's son testifying as to what they had, said: "When we first started business, we had two ice wagons and at the opening of the season of 1921 we had four to begin with, and we also had a supply truck that cost us $2000 that we supplied our wagons with and teams. In the middle of the season we run about five or six wagons, sometimes seven. We had about eight or nine or ten wagons on hand delivering ice." Again testifying the same witness said: "When we started in business thirteen years ago, we had three horses and at the opening of the season in 1921 we had about eight We also had for our ice business, ice tools and office equipment that were used in the ice business only."

The plaintiff testified as to profits—said some years they made good, made as much as $3000, and some other years would not make as much. That he could not tell exactly what the profits were, "they would average about $1500, something like that—over and above expenses—wear and tear and everything." The plaintiff, on cross-examination, testifying as to the property owned and operated in his business which included not only the sale of ice, but the sale of coal and some other activities, said: "In 1920 I had about ten horses and about six ice wagons and five coal wagons and a truck and all other ice equipment, and that was not mortgaged. I didn't give a mortgage on April 28, 1919, for $550, on nine horses, six coal wagons. one ice box, five sets of harness, one buggy and harness, stock of coal and gravel and stable, etc. Neither was it mortgaged in 1920. Me and my brother, Martin Dietrich, owned that in 1919; I don't know that

I had a mortgage on this stuff dated October 8, 1917, and filed for record on the 15th of November; I don't know that I gave any such mortgage. That is all the property I owned in 1920, and it was worth from $4500 to $6000, I don't know exactly. That is the actual worth of the business. The good will of the business is worth a whole lot if you don't want to sell it. And if you want to stay in your business you consider the good will of your business much higher than if you are tired of your business and want to get rid of it. Ain't it so? I believe I told you once already what these ten horses are worth, about $1000 or more, I don't know exactly; and the six ice wagons were worth about $1000.''

Joe Smith, who testified that he was a bookkeeper and accountant and had examined the plaintiff's books, was introduced as a witness, and certain statements prepared by him were introduced in evidence as exhibits. In making up these exhibits he used plaintiff's books and also such other information as was available, including checks and invoices, where obtainable, and information obtained from plaintiff and his sons. The exhibits cover all the different classes of business done by plaintiff, which included, besides the ice business, dealings in coal, blacksmithing coal, gravel, sand and some other operations, and the property used in all of them. In making up exhibits of operating expenses, it was sometimes impossible to show to which business they were attributable. In that event he said he apportioned the same according to sales. Among these exhibits introduced was one giving a statement of profit and loss for the year 1919, from each of the several different classes of business. This statement, upon its face, showed a net gain for that year upon the ice business of $2,471.24, and a total net gain on all plaintiff's operations of $2,919.75. The similar statement for the year 1920 gave the sum of $938.70, as the net gain on the ice business, and the total net gain on all the classes, including the ice business, was given as $195.43. There was an exhibit prepared in a similar way setting forth a loss of $3,271.87 upon plaintiff's business for the period beginning January 1, 1921, and ending October 31, 1921. The same witness had also prepared an exhibit, which purported to set forth a basis of arriving at the amount of damage claimed in the petition. In this exhibit, plaintiff's exhibit ''C-B'' there was inserted, as a loss, the foregoing item of $3271.87. To this was added the sum of $1298, as the net gain which it was estimated plaintiff should have made during the period mentioned, based upon an average annual gain of $1557.59; this sum of $1557.59 being one-half of the sum of the calculated gain of $2919.75 in 1919, and gain of $195.43, in 1920. In this exhibit also the witness added to the foregoing the sum of $3000 which according to his estimate should be added, as the cost of building up the business. To that he added the further

sum of $7500 as the value of the good will of the business. There was nothing on the books, or elsewhere, to show any such item as $3000, as being the cost of building up the business. The item of $7500, designated as the value of the good will of the business lost, was reached through a calculation by the witness, that an annual profit of about $1500 a year, upon property of the value of something more than $5000, which included property devoted to the coal as well as the ice business, justified placing the valuation of $7500 on the good will of the business.

A. C. Nielson, an accountant, introduced by defendant, testified he had made a tentative examination of the plaintiff's books. He had not had time to make a thorough and complete examination. He said the books were badly kept. He made an examination of exhibits prepared by the witness Smith, as compared with what was shown by the books. He testified that the books showed a loss in 1920, of $2265.97. He said the books showed an invested capital of $7474.08 at the end of the year 1919, and an invested capital of $5011.58 at the end of the year 1920. From this, he deduced the loss mentioned. He further testified that the books instead of showing a loss of $3271.87 for the year 1921 showed a gain for that year of $1469.25. On cross-examination he said the statements made for 1919 "was all right, and in 1920 it was practically all right." He testified that it was absolutely impossible from the books to separate the ice business and the coal business. The term "investment" had reference to the total investment, and was not referable solely to the investment in the ice business. The loss complained of by plaintiff in his petition, was the loss of his ice business, which it was alleged was a profitable business.

Considering the evidence upon the question of damages to plaintiff for loss of his ice business, its somewhat indefinite character, the difficulty of clearly separating this business from his coal and other forms of business, and all the circumstances, we cannot hold that the trial court, in setting aside the verdict, on the ground that it was excessive, abused its discretion, and, for that reason, the order setting aside the verdict and the judgment is affirmed, and the cause remanded for further proceedings. *Seddon, C.*, concurs.

PER CURIAM:—The foregoing opinion by LINDSAY, C., is adopted as the opinion of the court. All of the judges concur, except *Graves, J.*, absent.