DR. COURTNEY J. MURPHY, Respondent, v. KROGER GROCERY & BAKING COMPANY et al., Appellants.—No. 38280.—171 S. W. (2d) 610.

Division One, April 6, 1943.

Rehearing Denied, May 4, 1943.

*Wayne Ely* for appellants.

1188

*John C. Casey* and *Roberts P. Elam* for respondent.

VAN OSDOL, C.—Action for personal injuries. Amount of damages alleged at $25,000. The jury returned a verdict for plaintiff in the sum of $1,000. The trial court sustained plaintiff's motion for a new trial, and the defendants have appealed.

Plaintiff, respondent, assigned fifteen grounds in the motion for a new trial of which the following three are pertinent here:

"3. The verdict and judgment in said cause are against the weight of the evidence.

"11. The amount of damages awarded to the plaintiff by the jury was and is grossly inadequate.

"14. The amount of damages awarded to the plaintiff by the verdict of the jury is against the weight of the evidence."

The trial court in sustaining the motion for a new trial specified of record the eleventh ground, in the motion assigned, as reason therefor.

The sole assignment of error is, "The Court erred in sustaining plaintiff's motion for a new trial on the ground that the amount of damages awarded to plaintiff by the jury was and is grossly inadequate."

It is uniformly held that, "an appellate court will not interfere with the discretion of the circuit court in granting a new trial, on the ground that the verdict is against the weight of the evidence." Reichmuth v. Adler, 348 Mo. 812, 155 S. W. (2d) 181. However, the appellants contend that, in specifying the particular ground, inadequacy of the award, upon which the motion for a new trial was sustained, the trial court, in effect, overruled the motion as to all other grounds assigned; that, though the trial court is vested with wide discretion in determining whether a verdict is inadequate (or

excessive), such discretion is a judicial one and is not to be exercised arbitrarily; that where, as in this case (the trial court in effect so finding) the jury properly weighed the evidence, the trial court, in sustaining the motion on the specified ground, substituted the judgment of the judge to that of the jury; and that, consequently, the action of the trial court on the motion was arbitrary and an abuse of its discretion.

A trial court by specifying of record a particular ground for sustaining a motion for a new trial, in effect, overrules other grounds assigned in the motion. Marr v. Marr et al., 342 Mo. 656, 117 S. W. (2d) 230; Sakowski v. Baird, 334 Mo. 951, 69 S. W. (2d) 649. But when a trial court specifies as a ground for sustaining a motion for a new trial that the award of the jury is inadequate it is equivalent to saying that, in the mind of the trial judge, the verdict (amount of the award), is contrary to the weight of the evidence. Stegner v. Missouri-Kansas-Texas R. Co., 333 Mo. 1182, 64 S. W. (2d) 691; Herschel v. Orpheum Theatre Co. of Missouri, 330 Mo. 581, 48 S. W. (2d) 108; Hunt v. Gus Gillerman Iron & Metal Co., 327 Mo. 887, 39 S. W. (2d) 369; City of St. Louis v. Franklin et al., 324 Mo. 1212, 26 S. W. (2d) 954. Of the application of these cases to the case at bar the appellants urge:

". . . in none of those cases had the trial court ruled that the verdict was not against the weight of the evidence, and in deciding that the ruling·of inadequacy was equivalent to a ruling that the verdict was contrary to the weight of the evidence, the Supreme Court was indulging in a presumption that the trial court was of opinion that the verdict was against the weight of evidence, because there was nothing in the record to indicate that the trial court did not so find. In this case the trial court did so find. A presumption that the trial court was of opinion that the verdict was against the evidence cannot stand against the trial court's ruling that the verdict was *not* against the evidence."

We find no indication in the language of the opinions in these cases that this court indulged a presumption in ruling that the specification of the ground, inadequacy of award, is equivalent to the ruling that the verdict is contrary to the weight of the evidence. The ruling in these cases, we believe, rests upon a basis quite manifest: an assignment that the award is inadequate goes to the weight of the evidence; a consideration of the weight of the evidence relating to the nature and extent of the injury is of necessity implied in the determination of the question of the adequacy of the award—by no other means could the question of adequacy be determined. In this connection see Platt v. Cape Girardeau Bell Tel. Co. (Mo. App.), 12 S. W. (2d) 933. In the case at bar, by specifying the assigned eleventh ground in the sustension of the motion for a new trial and thereby, in effect, overruling the third ground, the trial court has

made clear the reason for its action: it considered, in the weighing of the evidence, that the verdict was for the right party but inadequate in amount of award. Dietrich v. Cape Brewery & Ice Co., 315 Mo. 507, 286 S. W. 38. While the assigned eleventh and fourteenth grounds are equivalent, in that they both go to the weight of the evidence as to the amount of the award, by specifying the eleventh ground in sustaining the motion and thereby, in effect, overruling the fourteenth ground, the court has made clear the particular respect in which it considered the amount of the award to be against the weight of the evidence, that is—it "was and is grossly inadequate." Although the assigned third, eleventh and fourteenth grounds are equivalent in that they all go to the weight of the evidence, it does not follow that the trial court, by sustaining the motion specifically on the assigned eleventh ground and thereby, in effect, overruling the third and fourteenth grounds, did thereby limit the effect of the eleventh ground upon which it specifically sustained the motion.

Though the appellants at the outset appear to concede that "the trial court has wide discretion in determining whether a verdict is inadequate . . . ," they have cited numerous decisions of the courts of this and other states to uphold a contention that, in the case at bar, the determination of the amount of damages allowable for the injury, was within the exclusive province and the discretion of the jury, and that the verdict should not have been set aside, there being nothing to indicate that the jury had abused its discretion. In all of the Missouri cases cited, save one, Edwards v. Missouri Ry. Co., 82 Mo. App. 478, and in most of those cited of other states, the amount of the award of the jury was upheld in the trial court by the overruling of the motion for a new trial; or the award was upheld, in effect, by sustaining the motion on grounds other than that the award was against the weight of the evidence. These cases are of little value here; for when a motion for new trial is sustained, as in the instant case, and the requested relief is granted, on reviewing such action, the appellate court, in considering the grounds in the motion upon which the motion is sustained, will be more liberal in upholding the trial court's action. Reichmuth v. Adler, supra; Schierloh v. Brashear Freight Lines (Mo. Sup.), 148 S. W. (2d) 747; Castorina v. Herrmann, 340 Mo. 1026, 104 S. W. (2d) 297. The appellate court will not reverse such ruling unless it clearly appears that the trial court has abused its discretion. Reichmuth v. Adler, supra; Hoepper v. Southern Hotel Co., 142 Mo. 378, 44 S. W. 257.

The general rule that trial courts have a wide discretion in passing upon motions for new trial applies to orders sustaining a motion for new trial made upon the ground of inadequate damages for personal injury. Stegner v. Missouri-Kansas-Texas R. Co., supra; Hunt v. Gus Gillerman Iron & Metal Co., supra; Haven v. Missouri R. Co., 155 Mo. 216, 55 S. W. 1035.

■ The appellants have stressed the case of Edwards v. Missouri Ry. Co., supra. This cause was reversed and remanded with directions to enter judgment on the verdict ($1.00) of the jury—the plaintiff, a passenger on defendant's train, was cursed, abused and threatened by a fellow passenger in the presence of defendant's servants who, it was alleged, did nót interfere. The plaintiff sustained no physical injuries. The trial court had sustained the motion for a new trial generally. The appellate court considered the case on the ground assigned in plaintiff's motion for a new trial, that the verdict was against the weight of the evidence. The court in the course of its opinion states, "In personal actions like this, founded in tort and sounding merely in damages, a new trial will not be granted on the sole ground of smallness ■ of damages." However, the court further states, "This rule is not applicable to actions ex contractu, nor in those ex delicto, where the damages may be measured with some degree of certainty." It seems clear that this case is illustrative of the class of actions in tort wherein the alleged injuries are of such a character as to be insusceptible of being ascertained with any degree of certainty. The Edwards case is not helpful to us here, for in the case at bar the respondent's injuries, and their nature and extent, are susceptible of being, and are, shown by evidence with some degree of certainty.

The appellants assert that courts may not pass upon the existence of disease or injury and the causes thereof; that a party is absolutely bound by the uncontradicted testimony of his own witnesses; and that, after verdict, the evidence should be viewed in the light most favorable to the prevailing party.

■ Considered aside from any question of conflict in testimony, or of credibility of witnesses, it may be remarked that courts must rely on witnesses learned in the particular science, art, trade or profession, involved in the trial of a cause, if the inquiry goes beyond facts within the knowledge and observation of lay witnesses and beyond the fields of common knowledge and of judicial notice. In the case at bar, as we shall see, an ascertainment of the nature and extent of respondent's injury is dependent very much indeed upon the testimony of experts. If the testimony of a party's witnesses is not contradictory one to another, and if there has been no surprise or mistake, it may be said that a party may not maintain a position which is not in harmony with the testimony of his own witnesses. Relating to appellants' assertion that, after verdict, the evidence should be viewed in the light most favorable to the prevailing party, it must be observed that, in the case at bar, the verdict has been set aside—in our review of the case herein the movant in the motion for a new trial, respondent, must be considered to be in the position of a prevailing party.

■ In the review of the evidence relating to the nature and extent of the respondent's injury, which must be made in the determination of the question of whether the trial court abused its discretion, we will not substitute our judgment for the judgment of the trial court by weighing the evidence. We will only determine whether or not there is substantial evidence to support the trial court's order; for, though the trial courts may, the appellate courts do not (in an action at law) pass on the weight of the evidence. King v. Kansas City Life Ins. Co., 350 Mo. 75, 164 S. W. (2d) 458; Stegner v. Missouri-Kansas-Texas R. Co., supra; City of St. Louis v. Franklin et al., supra; Guthrie v. Gillespie, 319 Mo. 1137, 6 S. W. (2d) 886; State ex rel. Atchison, T. & S. F. R. Co. v. Ellison et al., 268 Mo. 225, 186 S. W. 1075.

Is there substantial evidence that the award of damages by the jury is grossly inadequate; that is, is there substantial evidence that the award is substantially less than that which will fairly and reasonably compensate respondent for his injuries?

Respondent, 47 years of age, a resident of St. Louis, Missouri, is a dentist and has practiced his profession for about twenty-six years.

The evening of May 14, 1941, he was riding in the automobile of his friend, Clancy, moving eastwardly on U. S. Highway No. 66 in Franklin County, Missouri. Respondent was in the front seat on the right of Clancy, who was driving. The trailer truck of appellant, Kroger Grocery & Baking Company, weighing about 29,700 pounds, approached from the eastward and swung across the pavement southwardly, turning over. The top of the trailer hit the Clancy car, striking off the left headlight, ruining the left front fender and the left running board, and causing the left front tire to "blow out." Respondent was thrust forward and to his right. The trailer truck came to rest about fifty feet beyond the point of collision. Respondent testified that at the time of the impact he experienced very much pain in his back, head, and his left arm at the shoulder joint. He got out of the Clancy car and complained of pain in his back, arched himself backwards, holding his back with both hands, became nauseated and vomited; he was ill twice en route to his home in St. Louis.

The next day, May 15th, respondent consulted Dr. James P. Wade, a physician of medicine, who recommended bed rest, liquid diet, ice bags on abdomen, and observation. Dr. Wade visited respondent at his home on May 17th and 18th, and saw him at Dr. Wade's office May 19th, 21st, 28th; June 6th, 19th; July 16th; and September 11th. Four or five days after the collision respondent ■ returned to his practice, but for two or three weeks postponed such appointments as he possibly could; Dr. Wade had told him "to take it easy." During the summer of 1941, respondent states, he continued to experience pain in the back, head, and left shoulder;

he twice attempted to play golf, but was unable to finish either round because "My back was hurting me."

Testimony of respondent's witnesses tends to show that he suffered a fracture of the fourth lumbar vertebra. (The fourth lumbar vertebra is very near to the belt line.)

Dr. L. R. Sante, physician and a specialist in the taking and interpreting of X-ray films, took X-ray pictures of the respondent's skull, left shoulder and lower back, on June 19, 1941. These pictures did not reveal any patheological condition; but, no picture was then taken which could disclose the superior-anterior margin of the fourth lumbar vertebra.

It was the testimony of Dr. Wade that respondent, though complaining of general soreness, made no specific complaint to him of pain in the back prior to September 11, 1941; that treatment theretofore was for pain in the left arm and shoulder, head, and of the left axilla which, for a time, was infected. Respondent, however, testified that he complained to Dr. Wade every time he saw him "that I felt terrible."

There was evidence that respondent had sustained injuries to his head and left shoulder in 1937.

On September 11, 1941, respondent made additional complaints to Dr. Wade, who ordered X-ray pictures of the lower spine and sacrum.

According to the testimony of Dr. Sante, examination of these later pictures reveals that a triangular fragment of bone, about three-fourths of an inch in length, and about one-half inch in thickness at the point of greatest diameter, is broken off of the superior-anterior margin of the body of the fourth lumbar vertebra. There is no compression of the body of the vertebra and the intervertebral discs are intact. Heavy outgrowths of bone are present at the joint margins of the vertebrae and at the tendon attachments—evidence of hypertrophic arthritis of long standing. In Dr. Sante's opinion the fracture of the vertebra is recent, within four or five months of the time of the taking of the X-ray pictures.

Dr. Wade, upon this discovery of the fracture, recommended that respondent consult a surgeon; so, Dr. George T. Mehan, a specialist in orthopedic surgery, treated respondent, beginning October 14, 1941. Dr. Mehan found respondent to have a decided inhibition of the upper torso movement:

". . . Movement of the upper spine on the pelvis is comparatively negative, forward, backward, laterally to the left or to the right. By using the term negative there as to movement, I mean the movement is slight; the function is retarded. What attempt is made to execute these movements is productive of intense pain in the region of the lumbar spine. . . . X-ray examination of the lumbar spine reveals a triangular fragment of bone detached from the anterior and

superior margin of the fourth lumbar vertebra. This fragment of bone is completely detached from the main body of the vertebrae (vertebra) and the line of fracture is very definite and fairly wide in its entire length. Radiographs taken in the anterior-posterior views do not reveal this fragment, but lateral views show this fractured vertebra very definitely. . . . ''

An X-ray picture was taken January 10, 1942. In this picture, according to Dr. Mehan, it is shown that, while nature has attempted to fill in the line of cleavage with a calcium deposit, the fragment of bone is still detached and pressed forward. This is due to the lack of means of compressing the fragment to a close approximation and to thus enable a correct positional healing. The malposition of the fragment permits it to ''jab'' into the ligamentous tissues, causing pain.

Dr. Mehan further testified:

''. . . it is my opinion that the same force or trauma which caused the fracture excited and aggravated the arthritic condition in the . . . lumbar spine. It is my opinion that this pathology of the lumbar spine is a fixed affair and will continue to cause pain and disability throughout his natural life.''

Of the method of treatment:

''. . . You have to immobilize the entire area, and for that I wanted a body cast, which was also to act as a model for making a celluloid jacket for continuous wear, an ambulatory jacket. This was accomplished and the patient is wearing this support . . . ''

 It was the testimony of respondent's office assistant· that respondent has complained of pain in his back since he first returned to his practice after the collision in May, 1941. Respondent stated that he now (at time of trial, January 12-14, 1942) has full movement of his left shoulder, but continues to be treated two to five times weekly by Dr. Mehan; that he is having constant pain in his back, sometimes there is a ''shooting pain''; that he is a victim of headaches two to four times weekly; that, though he was able to sleep well before the injury, now, ''I never get a good night's rest''; that, though before the injury he was able to work· throughout the day, he is not now putting in a full day's work; and that, though his back was ''all right'' before the injury, he now wears a jacket which keeps his body rigid, but without which his back has only about twenty-five per cent of the normal movement.

 We believe the foregoing review shows there is substantial evidence: that the respondent sustained injury, the result of the collision of May 14, 1941, to his head and left shoulder, and injury, a fracture, to his back (the injury to the shoulder seems to have been temporary in character); that the injury to the head, though possibly in part the result of some prior accident, was still a source of pain to respondent at the time of the trial; that the respondent has suf-

fered, and is suffering, pain in the back, intense at times, due to the fracture and due to an aggravation of arthritis existent at the time of the injury; that respondent does not rest well, and cannot fully utilize his work time; that the aggravation of the arthritis condition is the result of the same force or trauma which fractured the fourth lumbar vertebra; and that the aggravation of the arthritic condition and the fracture of the vertebra have rendered rigid and made practically immobile the vertebrae of the lumbar spine—this condition will cause pain and disability throughout respondent's natural life.

In our opinion, the amount of the award, $1,000, is substantially less than the amount which would fairly and reasonably compensate the respondent for such injuries. We hold that the ruling under consideration, the sustension of the motion for a new trial on the ground that the award was and is grossly inadequate, was within the scope of the sound discretion of the trial court.

The judgment is affirmed. *Bradley* and *Dalton, CC.,* concur.

PER CURIAM:—The foregoing opinion by VAN OSDOL, C., is adopted as the opinion of the court. All the judges concur.