HARRIETT O'SHEA v. PATTISON-McGRATH DENTAL SUPPLIES, INC., and WILLIAM ZIMMERMAN, Appellants.—No. 38788.—180 S. W. (2d) 19.

Division One, April 3, 1944.

Rehearing Denied, May 2, 1944.

*Stanley Garrity* and *John W. Oliver* for appellants; *Caldwell, Downing, Noble & Garrity* of counsel.

856

858

*Hugh B. Downey* and *Maurice J. O'Sullivan* for respondent.

■ BRADLEY, C.—Action to recover $50,000 damages for personal injuries; the jury found for plaintiff, and fixed her damages at $500. The trial court sustained plaintiff's motion for a new trial on the ground of inadequacy of verdict, and defendants appealed.

Error is assigned on overruling defendants' separate demurrers to the evidence and in granting the new trial on the ground stated.

If plaintiff failed to make a submissible case, then other questions would be unimportant. Hence, we shall first dispose of the demurrers.

The demurrers go to the sufficiency of the evidence to establish the negligence charged, to plaintiff's alleged contributory negligence, and to the liability of defendant Pattison-McGrath. Plaintiff was struck, in Kansas City, February 9, 1942, by defendant Zimmerman's automobile, driven by him, while she was crossing, from east to west, Troost Avenue, a north and south street, at the intersection of Troost and 9th street, an east and west street. Defendant Zimmerman, at the time, was employed by the defendant Pattison-McGrath, and plaintiff contends that Zimmerman, at the time, was acting within the scope of his employment, which defendant Pattison-McGrath denies. The negligence submitted was the alleged failure on the part of Zimmerman to keep a vigilant watch ahead and his failure to sound a warning of his approach. The answer was a general denial and a plea of contributory negligence.

We shall first rule the questions of defendant Zimmerman's negligence and plaintiff's contributory negligence. Plaintiff was injured about 2:15 P. M.; it was snowing light, and "the prevailing wind direction was northwest with a maximum velocity of 19 miles per hour at 6:41 P. M." (day of accident). Plaintiff got off (at middle door) a northbound Troost Avenue street car at the intersection of Troost and 9th; walked north to intersection; waited till the street car passed on north; looked north, south and east, and then started across west. Defendant Zimmerman came from the west on 9th Street, turned south on Troost and struck plaintiff, she says, when she was within about three feet of the west curb, and threw her "up in the air" two or three feet. There was no vehicular traffic at the place except defendant Zimmerman's car and possibly one other car, ahead of the Zimmerman car, which went on east on 9th. It is, in effect, conceded that Zimmerman did not sound his horn or give any warning. Plaintiff testified:

"Q. Now, as you walked west on 9th Street at Troost there, did you have your eyes open? A. I sure did. Q. Were you looking ahead of you as you walked? A. Absolutely. Q. Did you see any-

thing before this car came on you and struck you? A. No. Q. You just saw that an instant before? A. That is right.''

On cross examination, plaintiff testified: ''Q. And did you ever look west on 9th street at any time? A. Not until I got up on the curbing. Q. That is when you were struck? A. I started up to the curbing, I glanced up and I seen this dark object, and with that I was hit. Q. That is the first time you had looked west on 9th street? A. I naturally see west on 9th street. Q. That is the first time you looked for traffic coming from that direction? A. Oh, yes. Q. That was just at the time you got struck? A. That is right.''

Plaintiff called defendant Zimmerman as her witness. He testified that as he approached the intersection he saw the street car coming north on Troost; that he stopped at a stop sign west of Troost, and looked to see if any one got off the street car; that visibility was good for a distance of two blocks; that there were cars parked on the south side of 9th street. ''Q. You could readily see any pedestrians that were walking on the sidewalk whether they were going east or west? A. I couldn't say it truthfully. The snow had been melting and it was on the sides, but it wouldn't melt on the windshield, quite watery, sticky. . . . Q. We will assume this is your windshield, two windshield wipers working. As you went down 9th street, I am not talking about the side windows, those windshield wipers cleaning off the two sides of your windshield, naturally as you looked out, your vision would be to both sides and you could naturally see any pedestrian walking on the sidewalk on 9th street. A. I believe I could. . . . Q. Did you observe anybody at all on the intersection of 9th and Troost on the south side? A. No, sir. Q. You didn't see Mrs. O'Shea until after you had struck her? A. No, sir.'' Zimmerman said that when he ''heard a thud'' (striking plaintiff) the right front fender of his car was ''almost ten feet'' east of the west curb on Troost (he estimated this also at 5 feet), and about six or seven feet south of the south curb on 9th street—''just a little south of the sidewalk. . . . Q. How fast do you say you were going? A. No more than five to eight miles an hour. Q. Five to eight miles an hour, and within what distance did you actually stop your car from the instant you felt the impact until you came to a complete stop? A. I would say three feet. . . . Q. There was nothing in the way of other traffic or nothing to obstruct your view ahead of your automobile, either on 9th street or going south on Troost at the time you were making your turn? A. Except there was a little snow on the edges of the windshield that the wiper doesn't carry away.'' It is, in effect, conceded that plaintiff made a submissible case as to Zimmerman's negligence, and we so rule.

Was plaintiff guilty of contributory negligence as a matter of law? It is contended that plaintiff ''either failed to look for traffic from the west until it was too late, or did not look with the

common prudence required.'' Plaintiff said that as she walked west she had her eyes open, was looking ahead; but did not see anything ''before this car came on'' her. It is true that on cross examination she testified to the effect that she did not look west on 9th street ''until she started up to the curbing'', and then glanced up and saw ''this dark object.'' Then when asked directly if that was the first time she had looked west on 9th street, she answered: ''I naturally see west on 9th street.'' Plaintiff also said that when she was struck she was thrown ''up in the air'' two or three feet.

Defendants' witness Taylor, who was at the northwest corner of the intersection, testified that the speed of Zimmerman's car was 5, 6, or 7 miles per hour. ''Q. And did you see the car and the lady come together? A. Well, the first thing I could see, I could see her head disappear out of sight, just as the car went around the corner and see her fall on the pavement.'' It appears, infra, that Zimmerman, at the time, was returning to work and was late.

It was snowing, and plaintiff had the right to give some attention to where she was walking. Mattan v. Hoover et al., 350 Mo. 506, 166 S. W. (2d) 557, l. c. 561. And, according to plaintiff, she was struck with sufficient force to throw her ''up in the air'' two or three feet. From this, the inference might be drawn that Zimmerman turned into Troost at a greater speed than he said. Plaintiff was crossing in the pedestrian way and she had the right to assume that an automobile driver would not turn south into Troost and drive upon her without any warning. Pitcher v. Schoch, 345 Mo. 1184, 139 S. W. (2d) 463, l. c. 466, and cases there cited. See also, Hopkins v. Highland Dairy Farms Co. et al., 348 Mo. 1158, 159 S. W. (2d) 254, l. c. 256; Miller v. Clark (Cir. D. C.), 109 Fed. 677.

''A demurrer to the evidence admits the truth of the evidence to which the demurrer is directed, and also admits all inferences of fact which a jury might fairly draw from that evidence; and such demurrer can only be sustained when the facts in evidence and the fair inferences to be drawn from such facts are so strongly against the party at whom the demurrer is directed as to leave no room for reasonable minds to differ.'' Goslin v. Kurn et al., 351 Mo. 395, 173 S. W. (2d) 79, l. c. 84, and cases there cited. We think that plaintiff's contributory negligence was for the jury, and so rule.

 Did plaintiff make a submissible case against defendant Pattison-McGrath? It is conceded that Zimmerman, at the time, was in the employ of his codefendant, and had been for several years. Pattison-McGrath handled dental supplies; the main store, or down town store, was at 1117 Walnut, and a branch store at the Dental College at Troost and 10th street, one block south of the intersection where plaintiff was injured. Zimmerman worked at the branch store for several years, but about a year and a half prior to plaintiff's injury, he had been city salesman for Pattison-McGrath, and one Carl

Hoff took over at the branch store. At the time of the accident the Dental College was having a semester ending. Students taking new courses needed new equipment, and Zimmerman, about a week before, came in from the field and was working at the college branch store of Pattison-McGrath during the semester change in the college. In working in the field, as city salesman, Pattison-McGrath paid Zimmerman 6 cents a mile on the upkeep of his car, and the mileage on the average was about 200 miles per week, but during the week of the accident, according to Zimmerman, and there is no evidence contra, he was not in the field, and had no mileage charge.

The branch store had definite hours to be open, 9 A. M. to 12, and 1:30 to 4 P. M. Zimmerman resided in Kansas City, Kansas, and on the day of accident, he drove his car home for lunch, and was returning to the branch store when the accident occurred, which he said was at 1:50 P. M., and which plaintiff said was at 2:15 P. M. (He was late, as stated, supra). Plaintiff's theory of holding Pattison-McGrath liable was submitted in her instruction No. 1. After hypothesizing the facts applicable to Zimmerman, the instruction continued:

"If you further find that at said time defendant Zimmerman was employed by Pattison-McGrath Dental Supplies, a corporation, and as part of the terms of his employment was required to and was paid by his employers to maintain and operate said automobile in the performance of his duties and that at said time and place he was taking said automobile to park it near his employer's place of business to have it available for its business use, if and when required, and that in so doing, if you find that he was acting within the scope and course of his employment in the performance of his duties, then if your verdict is in favor of plaintiff it should be against both defendants."

Zimmerman testified that he used his car as city salesman "to call on trade and to make deliveries and things of that kind"; to "pick up merchandise and deliver and take it back and forth from the downtown office (store) out to the Dental College" (branch store). "Q. And if you needed any material at the Dental College, you would use your car to go down to the main office and take it out there? A. Yes, sir. . . . Q. In other words, whenever you needed material out at the Dental College, you would use your car for the purpose? A. With the exception of anything real heavy. . . . The Court: Did you keep any stock at the Dental College? A. Yes, sir. The Court: To fill these orders (of students)? A. Yes, sir. The Court: If you did not have certain things, you would go to the main office (store) and get them? A. Yes, sir, pertaining to students. . . . Q. But that was the purpose of keeping the car, to use it for the convenience of the company to perform whatever duties might come up, in any day? A. I guess you would call it that, but it is not delivery. . . . Q. And that particular morning, had you made some calls on the trade? A. No, sir. Q. You had been working

at the College (branch store) all day? A. For a week. Q. For a week, and each day, in working at the College (branch store), you had your car down there? A. Yes, sir. Q. And then you would use it to make at least one call a day, or more, at the office downtown? A. One, at least, yes, sir. Q. And some days, during that week, while you were working at the College (branch store) you made more than one trip? A. We (Zimmerman and Hoff) alternated. He had his car. If on Monday, I would go in at noon, he would go in (to downtown store) the next noon, and I would stay out there.''

Under the evidence, and under the rule applicable to a demurrer thereto, we think that the question of Pattison-McGrath's liability was for the jury.

▮ Did the trial court err in granting the new trial on the ground of inadequacy of verdict? The motion for a new trial alleged seven separate grounds, 1, 3, and 7 are pertinent here, and are as follows:

''1. Because the verdict of the jury and the judgment is against the law and the evidence and the greater weight of the credible evidence in the case.

''3. Because the verdict of the jury was so inadequate and insufficient in ▮ amount that it indicates on its face that the verdict was the result of bias and prejudice on the part of the jury against the plaintiff and in favor of the defendants.

''7. That the verdict and judgment has no basis, in fact, under the evidence and under the entire and undisputed evidence plaintiff was entitled to recover substantial damages from the defendants so that the verdict and judgment is without support and is contrary to the evidence and to the greater weight of the evidence in the case.''

The effect of granting the new trial on the ground of inadequacy of verdict was to overrule the motion as to all other grounds. However, if the order granting the new trial cannot be sustained upon the ground specified by the trial court, plaintiff (respondent) is entitled to have the other assignments of error in her motion reviewed and the order granting the new trial affirmed if it can be upon such other grounds, but the burden of sustaining such order on other grounds is upon plaintiff. Sakowski v. Baird, 334 Mo. 951, 69 S. W. (2d) 649, l. c. 651, and cases there cited. And it is trite that the trial court may, in its discretion, grant one new trial upon the ground that the verdict is against the weight of the evidence. Riche v. City of St. Joseph et al., 326 Mo. 691, 32 S. W. (2d) 578; Lindsey v. Vance et al., 337 Mo. 1111, 88 S. W. (2d) 150; State ex rel. Spears v. Hughes et al., 346 Mo. 421, 142 S. W. (2d) 3; Murphy v. Kroger Grocery & Baking Co., 350 Mo. 1186, 171 S. W. (2d) 610.

It was held in the Murphy case that ''when a trial court specifies as a ground for sustaining a motion for a new trial that the award of the jury is inadequate, it is equivalent to saying that, in the mind of the

trial judge, the verdict (amount of the award) is contrary to the weight of the evidence", citing Stegner v. Missouri-Kansas-Texas R. Co., 333 Mo. 1182, 64 S. W. (2d) 691; Herschel v. Orpheum Theatre Co. of Missouri, 330 Mo. 581, 48 S. W. (2d) 108; Hunt v. Gus Gillerman Iron & Metal Co., 327 Mo. 887, 39 S. W. (2d) 369; City of St. Louis v. Franklin et al., 324 Mo. 1212, 26 S. W. (2d) 954.

Defendants say that the trial court, in granting the new trial on the ground of inadequacy of verdict, overruled all other grounds, including the ground that the verdict was against the weight of the evidence, and defendants say that the ruling in the Murphy case, supra, and the like ruling in other cases, are wrong and should be overruled. Defendants say that the true rule applicable, when dealing with an appeal from an order granting a new trial on the ground of inadequacy of verdict, "is that the appellate court should determine the question of law of whether or not the jury had before it sufficient substantial competent evidence for it to have reasonably arrived at the verdict (amount) it returned."

We cannot agree with such reasoning; no court has so ruled. "By 'substantial evidence' is meant evidence which, if true, would have probative force upon the issues," Berkemeier et al. v. Reller et al., 317 Mo. 614, 296 S. W. 739, 1. c. 752, and "when we speak of the weight of the evidence, we do not mean the quantity or amount thereof; we mean its weight in probative value." Reis v. Taylor et al. (Mo. App.), 103 S. W. (2d) 892, 1. c. 899; State v. Madole, 347 Mo. 575, 148 S. W. (2d) 793. According to defendants' contention, a verdict could never be set aside on the ground of inadequacy, if there was *any* substantial evidence to support the amount awarded, even though there was evidence in great abundance that the verdict should have been for a greater amount. Trial courts "may pass on the weight of the evidence in considering the size of a verdict." Sofian v. Douglas, 324 Mo. 258, 23 S. W. (2d) 126, 1. c. 129, and cases there cited, And we reaffirm the sound, sensible ruling in the Murphy case [350 Mo. 1186, 171 S. W. (2d) 1. c. 612] that "an assignment that the award is inadequate goes to the weight of the evidence; a consideration of the weight of the evidence relating to the nature and extent of the injury is of necessity implied in the determination of the question of the adequacy of the award—by no other means could the question of adequacy be determined."

Also, we call attention to Kelly v. Columbia Box Company (Mo. Sup.), 248 S. W. 589, 1. c. 590, where it is said: "The lower court has not only a large discretion in setting aside verdicts it deems excessive, but also which it deems inadequate, and this court refuses to interfere unless an abuse of discretion on the part of the lower court is manifest." See also, Platt v. Cape Girardeau Bell Telephone Co. et al. (Mo. App.), 12 S. W. (2d) 933, 1. c. 936; Dietrich v. Cape Brewery & Ice Co. et al., 315 Mo. 507, 286 S. W. 38, 1. c. 44.

The order granting a new trial should be affirmed, and it is so ordered. *Dalton* and *Van Osdol, CC.,* concur.

PER CURIAM:—The foregoing opinion by BRADLEY, C., is adopted as the opinion of the court. All the judges concur.