Coma DAVIS, Respondent,

v.

**STATE DEPARTMENT OF PUBLIC HEALTH AND WELFARE,**
Appellant.

No. 7335.

Springfield Court of Appeals.

Missouri.

Jan. 5, 1955.

John M. Dalton, Atty. Gen., Paul Mc-Ghee, Asst. Atty. Gen., for appellant.

J. Bernie Lewis, Ava, for respondent.

RUARK, Judge.

The respondent, Coma Davis, was removed from the old age assistance rolls in March 1953. He appealed to the Director of Public Health and Welfare, and a hearing was held before a referee on May 20, 1953. Based on the record made at that hearing, the Director came to the conclusion, "We are not convinced the claimant owed his daughter a valid debt, and it is found claimant transferred property to his daughter for the purpose of rendering himself eligible to continue to receive old age assistance benefits." It was therefore ruled that claimant was ineligible and the decision of the local welfare office in removing him from the rolls was affirmed. Such determination was by the respondent appealed to the Circuit Court of Douglas County, which reversed the finding of the Director and remanded the case for redetermination, upon a finding of such court that a hearing and determination of applicant's eligibility and rights under the laws of Missouri pertaining to old age assistance was not granted to the applicant; and that the decision of the Director of Public Health and Welfare was arbitrary and unreasonable. From such decision the Department has appealed.

The case must be determined under the provisions of section 208.010, RSMo 1949, V.A.M.S., then in force. Such statute provides, among other things, that benefits shall not be payable to any person who has made an assignment or transfer of property for the purpose of rendering himself eligible for benefits.

In reviewing an old age assistance award the court determines only whether or not a fair hearing has been granted the applicant and whether or not the decision of the Director of Public Health and Welfare was arbitrary and unreasonable. Section 208.100(5), RSMo 1949, V.A.M.S.

As to the first assignment, i. e., that the court erred in finding that applicant had not been accorded a fair hearing, we agree with the appellant. The record shows that the respondent was granted a hearing before the referee, was represented by counsel, was permitted to call and examine witnesses and to cross-examine appellant's witness. Neither abuse nor restriction is shown, and it appears that he was allowed full latitude in presenting his facts. We cannot find anything suggestive of unfairness in this.

The other question is whether or not the decision of the Director of Public

Health and Welfare was arbitrary and unreasonable. In determining whether the Director's finding was arbitrary and unreasonable we are restricted to the question solely of whether or not there was substantial evidence to support the finding. If there was substantial evidence the decision of the Director must be affirmed. If there was no substantial evidence the proceedings must be remanded for redetermination. We do not try the case de novo nor consider the credibility of witnesses nor the weight of the evidence. If the record contains substantial evidence we may not disturb the finding, even though, had we had the inquiry in the first instance, our decision would have been contrary to that reached by the Director. In our examination we should search the record for evidence most favorable to the finding of the Director. Chapman v. State Social Security Commission, 235 Mo.App. 698, 147 S.W.2d 157; Hooks v. State Social Security Commission, Mo. App., 165 S.W.2d 267; Brattin v. State Social Security Commission, Mo.App., 194 S.W.2d 536; Howlett v. State Social Security Commission, 347 Mo. 784, 149 S.W.2d 806; Linton v. State Dept. of Public Health, Mo.App., 252 S.W.2d 841. But the evidence must be the facts adduced and not the conclusions of the witnesses. Nichols v. State Social Security Commission, 349 Mo. 1148, 164 S.W.2d 278.

Since the question of whether or not the finding was arbitrary depends upon whether *substantial evidence* is in the record, the meaning of such expression is important.

■ The last definition we find when used in reference to cases of this kind is that in Collins v. Division of Welfare, Mo., 270 S.W.2d 817, loc. cit. 820, wherein it is said, " 'Substantial evidence' is evidence which, if true, has probative force upon the issues, i. e., evidence favoring facts which are such that reasonable men may differ as to whether it establishes them; it is evidence from which the trier or triers of the fact reasonably could find the issues in harmony therewith; it is evidence of a character sufficiently substantial to warrant the trier of facts in finding from it the facts, to establish which the evidence was introduced." Other definitions are, " 'evidence from which the triers of the fact reasonably could find the issue in harmony therewith' " [1]; " 'evidence which, if true, would have probative force upon the issues' " [2]; "whether the jury reasonably could find the issue thereon." [3]

■ In State v. Gregory, 339 Mo. 133, 96 S.W.2d 47, loc. cit. 51–52, it is said, "In this state the scintilla doctrine does not prevail. (Citing Scrivner v. American Car & Foundry Co., 330 Mo. 408, 424, 50 S.W. 2d 1001, 1006.) And what is substantial evidence? Berkemeier v. Reller, 317 Mo. 614, 642, 296 S.W. 739, 752, says it is 'evidence which, if true, would have probative force upon the issues.' But it is more than that; even a scintilla of evidence must tend to prove the issue. * * *

"To amount to more than a scintilla, that is, to be substantial, it has been said: 'The evidence must be of a character sufficiently substantial, in view of all the circumstances of the case, to warrant the jury, as triers of the facts, in finding from it the fact to establish which the evidence was introduced.' Holstein v. Benedict, 22 Haw. 441, 445, Ann.Cas.1918B, 941, 943. In other words, substantial evidence is evidence from which the triers of the fact reasonably could find the issue in harmony therewith."

At loc. cit. 52, of 96 S.W.2d quoting from James v. Kansas City Gas Co., 325 Mo. 1054, 1069, 30 S.W.2d 118, 123, " 'Whether the evidence in a given case is

---

1. State v. Miller, Mo., 202 S.W.2d 887, loc. cit. 889; State v. Shilling, Mo.App., 212 S.W.2d 96, 99; State v. Shipley, Mo., 232 S.W.2d 515, 517.

2. Shade v. Brinkopf, Mo.App., 119 S.W.2d 444, 446; Berkemeier v. Reller, 317 Mo. 614, 296 S.W. 739, 752; O'Shea v. Pattison-McGrath Dental Supplies, 352 Mo. 855, 180 S.W.2d 19, 23.

3. State v. Biswell, 352 Mo. 698, 179 S.W.2d 61, 65.

sufficient to support the finding of the jury, when taken and considered in the fashion in which it must be on demurrer, depends on whether it is sufficient to establish with reasonable certainty in the minds of persons of ordinary and average intelligence the existence of the facts on which the finding is necessarily based.' "

Again at loc. cit. 52 of 96 S.W.2d quoting from Hardin v. Illinois Cent. R. Co., 334 Mo. 1169, 1180, 70 S.W.2d 1075, 1079, 1080, " 'If reasonable minds could fairly and honestly have two views of the matter from all the evidence, then plaintiff's testimony was substantial evidence of his theory of the facts, * * *.' "

The court concludes its investigation with the statement, loc. cit. 52 of 96 S.W.2d, "Now since the test of substantial evidence is whether a jury reasonably could find the issue thereon, * * *."

In National Labor Relations Board v. Union Pacific Stages, Inc., 9 Cir., 99 F.2d 153, which involved a finding of the National Labor Relations Board, the language of the court at loc. cit. 177 is, " 'Substantial evidence is evidence furnishing a substantial basis of fact from which the fact in issue can reasonably be inferred; and the test is not satisfied by evidence which merely creates a suspicion or which amounts to no more than a scintilla or which gives equal support to inconsistent inferences.' * * *

" ' "Substantial evidence" means more than a mere scintilla. It is of substantial and relevant consequence and excludes vague, uncertain, or irrelevant matter. It implies a quality of proof which induces conviction and makes an impression on reason. It means that the one weighing the evidence takes into consideration all the facts presented to him and all reasonable inferences, deductions and conclusions to be drawn therefrom and, considering them in their entirety and relation to each other, arrives at a fixed conviction.

" 'The rule of substantial evidence is one of fundamental importance and is the dividing line between law and arbitrary

power. Testimony is the raw material out of which we construct truth and, unless all of it is weighed in its totality, errors will result and great injustices be wrought.' National Labor Relations Board v. Thompson Products, Inc., 6 Cir., 97 F.2d 13, 15."

We conclude from the foregoing that our question, reduced to simple language, is whether the Director could with reasonable certainty find or infer from the evidence that respondent had transferred his property for the purpose of making himself eligible. It is not a question of whether the transfers were made, for such is admitted. The proposition is whether the evidence reasonably justifies the conclusion that the transfer was made with the prohibited purpose or intent.

Respondent Davis was put on the old age assistance rolls commencing January 1, 1948. He was taken off on March 31, 1949. The case was reopened August 6, 1949, and he was taken off again in September 1949. The case was again reopened on March 12, 1951, and he drew assistance until March 1953, at which time he was again removed, on the basis of fact that he had, at some time not shown but presumably about the first of 1953, sold his equity in a home and, in the opinion of the county welfare office (and later of the Director as found) had made transfers of a part of the proceeds of such sale in order to render himself eligible.

During the principal portion of the period here covered he had as members of his household a son, Paul, who was in high school, and a daughter, Cinita, who at some time during the period commenced work as a teacher and who finally, in October of 1952, married and left the home.

Testimony of Davis in substance is that he was (had been) the owner of a small dwelling, subject to an encumbrance originally amounting to $800. This house had previously sold for $1,700 and was, prior to the improvements herein to be mentioned, badly in need of repair. That "whenever they threw me off the old age assistance three years ago" he was ill and unable to

work and was being treated by a doctor in Springfield. That Cinita had commenced teaching and he made a deal with her that if she would pay off the mortgage and repair and fix up the place it would be hers. That thereafter she made the improvements and repairs later mentioned, paid $200 on the principal of the mortgage, paid the interest, paid the taxes, paid the support of his son Paul in school and his (respondent's) doctor bills. That after Cinita was married she had to have a tractor and needed the money and stated to him, "Pop, we'll just have to sell this and try to get you a little place or something." Accordingly the place was sold at the price of $2,500 (which price respondent stated they were able to get because of the improvements Cinita had made on the place). After deducting $125 for real estate commission and the then mortgage balance of $618, check for the net amount of $1,757 was made to Cinita, but out of it $400 was deposited to his name at the bank and he retained $157 in cash to pay some debts, included in which was a hospital bill for his son Paul and the sum of $50 which he owed to another son, Russell. Cinita got the balance of $1,200, which was less than she had put in the place. Question was raised in regard to the alleged gift to another daughter, Geneva, in the amount of either $235 or $205. Respondent's explanation was that Geneva's house had burned down and that shortly after that her husband was at work and could not go to a certain sale. That he, respondent, went to the sale and bought two cows for them at a cost of $205, which amount Geneva and her husband later repaid to him. Check in such amount, signed by Geneva's husband and payable to the respondent, was produced and is an exhibit in the record. Respondent testified that in all these transactions he had no thought of making himself eligible for old age assistance. That he had tried to tell the case worker about the transactions but "they didn't want to understand me."

Cinita Brown, the daughter, testified in verification of her father that after she started teaching the house was badly in need of repair and an understanding was entered into that she was to repair the house and pay off the mortgage, that her father was to have a place to live and she was to own it at his death. That this was explained to the other children and they all understood it. That in accordance with such agreement she paid $200 on the mortgage; $144 for accumulated interest; $112 for taxes; bought linoleum for five rooms (sold with the house) at $75; had five rooms papered at a cost of at least $75; put on a new roof at a cost of $85; built a new front porch at $75; fixed the basement and steps at $49; bought wood and gas for one winter, the gas costing $64; paid for blacktopping the street at $16; bought things for Paul, including a senior ring ($21) and pictures ($17.50); paid doctor bills (estimated total $75); and also occasionally bought groceries, paid for cleaning and washing and utility bills. Some of the figures she gave were exact, for which she had receipts, and some were estimates. She testified that she had spent more than the $1,200 she received from the sale and that such payment to her was in no way a gift. She stated she told the case worker about the expenditures but the case worker did not write them down but told her (the witness) "if I had paid a mortgage that would have been all right, but the way it was it was guesswork. Of course, you just don't mortgage your father." The witness further stated that she was at home during part of the time her father drew old age assistance, that her income was figured in the budget and that during part of the period in which she paid the various items she had mentioned her father was on old age assistance.

Geneva Lansdown, another daughter, testified that after Davis was cut off the rolls it was agreed in the family that Cinita was to pay off the mortgage and keep her father. That he was to have a life estate, and Cinita in turn was to own the place. That this was discussed with "the heirs." That in respect to the alleged gift to her, her father bought two cows as agent for her husband and that she and her husband

repaid him for such purchase by means of the check for $205 which is an exhibit. That her father gave her nothing.

Geraldine Hailey, the case worker in charge of the case, testified that Davis didn't give a satisfactory explanation in regard to the money. That he told her he gave $235 to Geneva and that Cinita got $1,300. That he gave Geneva the money because her house had recently burned and she needed it; but he did not in that interview mention the cow deal but that she talked to him later and he told her of it. He said he gave Cinita $1,300 because of the things she had bought for the family and paid for the family. That later she talked to Cinita, who told her that she got $1,200 and then said something about telling her daddy she needed $100 to pay some bills the next day and he gave her $100 in cash. That from August 1949 to September 1950 Cinita was a member of the household and her needs and income were figured in the budget and that the case was closed in September 1950 because she was "unable to obtain adequate information for the completion of the household budget." That none of the family told her anything about an agreement whereby Cinita was to get the property if she would pay off the mortgage and take care of her father. That Cinita didn't itemize the things she claimed she had paid, she just said she had put that much in the place. "I asked her then what it was spent for and right off she couldn't recall. She didn't mention the senior ring and hospital bill." That she had figured the assistance budget with Mr. Davis and he had "indicated" all the time that these were his expenses and they had been included in his budget as his own expenses. (The budget showing these items was not offered, nor is it shown what amount Davis actually drew.) That she, the case worker, concluded that the money was transferred for old age assistance purposes because of the fact that Davis did not present any documentary evidence to verify the expenditures, that there was no recorded indebtedness to Cinita Brown and there was no apparent reason why he should have given Geneva $235.

We have searched the record carefully and we find no evidence which in our opinion justifies (with reasonable certainty) the inference that the transfers were made for the prohibited purpose. True, we find suspicion. Appellant cites us to a case of this court, i. e., Howell v. State Dept. of Public Health and Welfare, 249 S.W.2d 863, 869, to the effect that "The court is not unmindful of the law that where one conveys property to relatives, without consideration or adequate consideration, it is the duty of the court to treat with caution such transactions." That statement we again confirm, but it must be noted that it is directed to a situation where the transfer is made "without consideration or adequate consideration". In cases of this kind we would carefully examine a conveyance without consideration to anyone. The case does not hold that the fact of relationship justifies an inference or conclusion based on suspicion, and in fact at loc. cit. 870 it is stated, "True enough it might be conjectured or suspicioned that Respondent's motive in conveying her home to her nephew was to render herself eligible for old age assistance. But we think, under the facts in this case, that neither conjecture nor suspicion rises to the dignity of substantial evidence to support the finding and award of the Commission."

■ It frequently happens that the responsibility of seeing after the aged one in a large family falls upon some one person who is willing to assume that burden. And even though the transaction be contractual and for good consideration we think it is contrary to human experience to expect that in the majority of such instances formal instruments are drawn, executed and recorded, or that meticulous records are kept. We do not say that transactions between relatives should not be scrutinized. What we do say is that, a consideration having been shown, the smelly finger of suspicion should not be pointed at those who might have motives of filial love and devotion above and beyond that of reimbursement, repayment or even private gain, and so and for such reason an inference

drawn from the transaction which, as between strangers, would go unquestioned.

In Wooton v. State Social Security Commission, Mo.App., 190 S.W.2d 644, the question was whether a father was ineligible because of a transfer of funds, a portion of which he used to pay indebtedness to certain of his daughters. It was said, loc. cit. 647, "It might be conjectured or suspected that claimant's motive in making said payments to his daughters was to render himself eligible for old age assistance, but we think that neither conjecture nor suspicion rises to the dignity of substantial evidence sufficient to support the finding and award of the Commission. Such suspicion may have justified a further investigation by the Commission to determine whether any substantial evidence could be procured to support the view that the debts owed to the daughters were not genuine, but we think it was not sufficient as a basis for a finding and award denying the claim on the evidence actually adduced at the hearing."

In Myers v. State Social Security Commission, Mo.App., 181 S.W.2d 565, loc. cit. 568, it was said, "While there were other circumstances that might give rise to a suspicion that plaintiff *might* have fraudulently transferred the note in order to make himself eligible for old age assistance, such circumstances cannot be said to constitute substantial evidence of the ultimate fact upon which the finding and an award rest."

 An inference born the bastard child of lone Suspicion has no standing; but in order to be legitimate there must have been a wedding with Logic, and conception must have been had upon a bed of facts. In this record we think Doubt has crept into the chamber, and we cannot recognize the offspring of such union as being a legitimate inference. We are not here called upon to decide whether Coma Davis in the past drew more assistance than he was entitled to, nor whether he misrepresented his needs in securing it. The question which substantial evidence must support is, did he dispose of the money *for the purpose of* rendering himself eligible for benefits. The fact that he may have made an unwise agreement, or may have paid more that he was legally bound to, or even that he may have been victimized by the beneficiary of the payment, does not establish the fact that his acts were done "for the purpose of" making himself eligible. The inquiry is as to his purpose and intention as may be found or inferred.

We can understand why the circumstances raised the "doubt of suspicion" in the minds of those who have the task of administering this law, but we cannot say that such amounts to substantial evidence; and it is our conclusion that the trial court was correct in its judgment that the decision of the Director of Health and Welfare was arbitrary and unreasonable, and in remanding the case for redetermination, and such judgment is therefore affirmed.

McDOWELL, P. J., and STONE, J., concur.