Robert A. FARR, Plaintiff-Respondent,

v.

Thomas MANZELLA d/b/a American Cab Company, Defendant-Appellant.

No. 23632.

Kansas City Court of Appeals.

Missouri.

Dec. 3, 1962.

Lewis W. Sanders, Kansas City, for appellant.

Arthur C. Popham, Kansas City, for respondent.

SPERRY, Commissioner.

Plaintiff, a pedestrian, was struck and injured on a public street in Kansas City, Missouri, by a motor vehicle owned and operated by defendant taxicab company. Trial to a jury resulted in a verdict and judgment for plaintiff in the amount of $9000. Defendant appeals.

The accident occurred at the intersection of 8th and Charlotte Streets, in the early evening of November 6, 1958. Charlotte is a north-south street, 46 feet wide, and traffic is limited to south bound. 8th is an east-west street. There are traffic lights at this intersection.

According to the evidence, plaintiff was, at the time, about 70 years of age and in reasonably good physical and mental condition. He stated that, as he stood at the southwest corner of the intersection, waiting for the signal, he observed a taxicab parked on the north side of 8th, just east of Charlotte, headed west; that, when the traffic light "flopped" green, he stepped into the crosswalk and proceeded to walk eastward, in the crosswalk, watching the traffic light; that he did not again see the taxicab.

Corp. Hagedorn, Kansas City police, stated that he arrived at the scene of the accident and found plaintiff lying in Charlotte Street, 47 feet south of the south curb line of 8th, and 6 feet west of the east curb line of Charlotte; that he was in a semiconscious state, suffering from a severe laceration on his head, from which

he was bleeding; that there was blood on plaintiff's head and blood on the street; that Mr. Hord (the operator of the taxicab) was present and told and showed him where and how the accident occurred; that plaintiff was unable to speak coherently; that he was loaded into an ambulance and sent to Kansas City General Hospital.

Mrs. Knight stated that plaintiff had a room at her house, at the time he was injured; that, prior to his injury, he was alert and his health was good; that he arrived home at about 8:00 p. m. on November 6, the day he was injured; that she and another tenant helped him to his room; that he scarcely knew what he was doing; that there was blood on him, and his legs and back were hurting; that he could hardly walk; that she and another person stayed and attended him throughout the night; that he was taken to General Hospital the next day.

Orville Farr, plaintiff's son, came to visit his father a little after 8:00 p. m. He stated that he found him lying across the bed, semiconscious, blood on his face and shoulder; that there was no bandage on his head; that he was not himself, was in pain, and was holding his stomach and side; that he wouldn't talk; that "he didn't make sense"; that, later, he saw him at the General Hospital and had him removed therefrom to Research Hospital; that, at the time of trial (Nov. 1961) plaintiff required full time personal care in a nursing home. He stated that, in his father's room, he found a billfold with some money in it, about which his father could tell him nothing.

John Manzella, (a son of Thomas) general manager of defendant, was called as a witness by plaintiff. He stated that he learned of the accident over defendant's radio; that he drove to the scene; that plaintiff was lying in the street; that he had blood on him and was bleeding; that defendant's supervisor was also present, as was the operator of the cab, Mr. Hord; that Mr. Hursh, a lawyer and adjuster, and

Mr. Stein, a shorthand reporter, also arrived at the scene at about that time; that plaintiff was put in an ambulance; that witness drove to General Hospital where he knew that plaintiff was being taken; that he saw Hursh and Stein at the Hospital and knew what they were there for; that witness talked to Hursh; that Hursh intended to get a "release" from plaintiff; that Hursh was, "indirectly", employed by defendant but was directly employed by Vincent and Cook, who were adjusters, "that is what they are paid for"; that, at the General Hospital, he saw Hursh, Stein and plaintiff in Hursh's automobile; that he followed the car to plaintiff's residence; that witness parked his automobile nearby, while Hursh and Stein talked with plaintiff; that, eventually, Hursh came to witness' car and said "the baby is born", or words of that import, meaning that he had obtained a release from plaintiff; that witness cashed a check for $100, drawn on defendant and payable to plaintiff, presented to him by Hursh. (The record is unsatisfactory as to when or why plaintiff was released or left General Hospital a very short time after his admission and without, apparently, having received any adequate treatment for his serious injuries, not even a bandage or dressing on his bleeding head). Mr. Manzella further admitted that he had previously testified, by deposition, that Mr. Hord, the cab driver, told him at the scene of the casualty how the accident had occurred, and that plaintiff was struck while walking across the street in the crosswalk. He also stated that such testimony was true when he gave it and that it was true at the time of this trial.

Dr. Overesch, a prominent and well qualified orthopedic surgeon, stated that, when he saw plaintiff at Research Hospital on Nov. 19, he learned that he had been in City General Hospital for some two weeks prior thereto; that he had been in traction; that he had an extensive head laceration which was healed; that he had suffered a comminuted fracture of the left side of the pelvis and of the acetabulum (hip sock-

et); that any motion of the hip was painful; that pressure over the pelvis was painful; that he was mentally confused; and that the injuries he received, including his brain injury and mental condition, were of a permanent character and that he would continue to suffer therefrom.

Defendant offered no evidence.

Defendant makes no point regarding the nature, character, seriousness, or permanency of plaintiff's injury. There is no claim made that the amount of the judgment is excessive. While defendant pleaded, in bar of this action, that plaintiff had released his claim against defendant, for a valuable consideration, he makes no mention of that point in his brief.

■ Defendant contends that no submissible case was made. This contention rests on his theory that there is no evidence tending to prove that defendant was guilty of any negligence. In ruling that point we will bear in mind that plaintiff's evidence stands uncontroverted and that he had a verdict and judgment thereon. We shall accept it as true and draw therefrom every reasonable inference in favor of the verdict. Buesching v. St. Louis Gaslight Company, 73 Mo. 219, 230–231.

■ Plaintiff stood at the southwest corner of the intersection watching for the traffic light to change. When it turned green he stepped down into the pedestrian crosswalk and walked therein eastward, watching the traffic light. He was struck by defendant's taxicab when near the east curb line of Charlotte. These are the undisputed facts in evidence. There is one person who knew all of the facts that transpired, towit, Mr. Hord, defendant's employee. But defendant did not call him nor did he offer any explanation of why he failed to do so. We assume that he was not called as a witness because his testimony would have been unfavorable to defendant and would have confirmed the facts related in evidence by Mr. Manzella.

■ Plaintiff pleaded, proved, and instructed on a traffic A 1 ordinance, of Kansas City, Missouri, which is as follows:

"* * * A pedestrian crossing or starting across at a crosswalk or intersection on a green signal * * * shall have the right of way over all vehicles, including those making turns, until such pedestrian has reached the opposite curb or safety zone, and it shall be unlawful for the operator of any vehicle to fail to yield the right of way to any such pedesterian. * * *"

Under the ordinance, defendant was required to yield the right of way to plaintiff, he being in the crosswalk long before the vehicle struck him, long enough for a 70 year old man to walk 40 feet, in full view of Mr. Hord. Under the uncontroverted facts, Hord was negligent and such negligence contributed to cause the injury.

■ But, defendant says, the evidence discloses that plaintiff was guilty of contributory negligence as a matter of law in that, after entering the crosswalk, he failed, thereafter, to look at the cab. He cites a number of cases, none of which involved facts similar to those in this record. However, whether or not one is guilty of negligence is usually for the jury to say. Fortner v. St. Louis Public Service Company, Mo., 244 S.W.2d 10, 13. Determination of that point depends upon the surrounding facts and circumstances, for what would constitute negligence in one situation might not do so in other circumstances. Fortner v. St. Louis Public Service Company, supra; Hamilton v. Ross, Mo., 304 S.W.2d 812, 813–814. In this case, plaintiff saw the cab when it was parked, east of Charlotte, headed west. He could not have known whether the driver would proceed west, across Charlotte, or whether he would enter the intersection and turn south. But he had a right to rely on Mr. Hord's obeying the law and, in the event he should turn south on Charlotte, plaintiff could legally rely on his yielding the right of way to plaintiff, who

was already walking eastward in the crosswalk. Lackey v. United Railways Company, 288 Mo. 120, 231 S.W. 956, 961. He had a right to assume that Hord would not turn south into Troost and drive directly upon him. O'Shea v. Pattison-McGrath Dental Supplies, Inc. et al., 352 Mo. 855, 180 S.W.2d 19, 21. Plaintiff's duty to look northward again, toward the parked cab on 8th Street, east of Charlotte, was relative, not absolute. As a general rule a person is not required to look for danger when there is no cause to anticipate danger. The walk light itself was some assurance to plaintiff that he could proceed safely and that southbound vehicles, including defendant's cab, would not enter the crosswalk and strike him. These were factors that the jury could properly consider in determining whether plaintiff was guilty of negligence in not again looking northward after entering on the crosswalk. Romandel v. Kansas City Public Service Company, Mo., 254 S.W.2d 585, 591. Plaintiff was not guilty of contributory negligence as a matter of law; that question was for the jury under the evidence here shown.

■ Plaintiff's instruction No. 2 submitted facts necessary to be found to support a finding that he had not executed a valid release of his cause of action, as pleaded by defendant. In his instruction No. 3 plaintiff submitted facts required to be established in order to support a verdict for him on the issue of negligence, causation and plaintiff's damages resulting from the submitted negligence.

Defendant complains of the giving of plaintiff's burden of proof instruction No. 5, wherein the jury was told " * * * if, from the greater weight of all the credible evidence in the case you find all the facts to be as outlined and submitted in the foregoing instruction No. 2, then plaintiff, Mr. Farr, has met and discharged all burden of proof legally resting upon him".

Instruction No. 3 required the jury to find every element and fact necessary to support a verdict for plaintiff on the negligence charged in the petition, established by the evidence, and submitted by this instruction. It was a verdict directing instruction.

Defendant contends that instruction No. 5 was reversibly erroneous and supports his position by citing Hilton v. Mudd, Mo.App., 174 S.W.2d 31, 38. What is there said has application to a verdict directing instruction but No. 5 here was not in that category. It was in the nature of a discretionary instruction. He also cites Lawson v. Davidson, Mo., 344 S.W.2d 76, 77, 79. There, too, the instruction considered directed a verdict and no finding of causation was required therein. In the case at bar, instruction No. 3 required a finding of every element necessary for the finding of a verdict. Instruction No. 5 referred only to instruction No. 2, which, in turn, dealt only with the question of "release". That issue is not mentioned by defendant in this appeal.

Defendant offered instruction No. 7, which was given. It deals extensively with the issue of plaintiff's contributory negligence. Instruction No. 8, offered by defendant dealt in detail with the matter of burden of proof borne by plaintiff.

We do not believe that defendant was prejudiced by the giving of the instruction, even if it be conceded to be technically erroneous. The error did not materially affect the merits of the action. Section 512.160 RSMo 1959, V.A.M.S.; Crosby v. St. Louis County Cab Company, Inc., Mo.App., 320 S.W.2d 944, 947.

The judgment is affirmed.

MAUGHMER, C., concurs.

PER CURIAM.

The foregoing opinion of SPERRY, C., is adopted as the opinion of the court.

All concur.